Charles MENDOZA,
Petitioner-Appellant,

v.

Harold G. MILLER, Warden,
Respondent-Appellee.

No. 84–1791.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1985.

Decided Dec. 19, 1985.

Howard R. Eisenberg, Southern Ill. Univ. School of Law, Carbondale, Ill., for petitioner-appellant.

Joel B. Merkel, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., Benton, Ill., for respondent-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.

COFFEY, Circuit Judge.

The petitioner, Charles Mendoza, appeals the denial of his petition for habeas corpus. We affirm.

I.

The following facts were presented in the respondent's motion for summary judgment and are not in dispute. On March 14, 1984, Nathan Cowger, an inmate of the United States Penitentiary at Marion, Illinois, was stabbed to death in his cell. The

unit officer on duty, an Officer Kaffenberger, responded to Cowger's screams and observed two inmates running from the victim's cell. Kaffenberger was able to positively identify one of the perpetrators as inmate Jose Ramon Vallez but was unable to observe directly, and thus unable to positively identify, the second inmate. Initially, Kaffenberger believed the second inmate to be one Eti Fiaalii. Approximately five seconds after his assailants fled, Cowger staggered from his cell and, with Kaffenberger's assistance, walked to the cell block exit. Cowger was taken to the prison infirmary by other guards and died of his stab wounds a short time later.

Kaffenberger, after assisting Cowger to the exit, returned to the cell block and closed the grill between the ranges, trapping inmates Charles Mendoza and Mackie Smothers on ranges that were "out-of-bounds" for them. The institution's staff conducted a "shake-down" of the unit and recovered an ice pick-type weapon and a homemade knife. The ice pick was found underneath a trash can and the knife was discovered on the ground below an open window; however, the record does not reveal their location in relation to the stabbing incident. The prison staff also began an investigation of the incident and learned from confidential sources that Cowger had few friends, had been the target of a "silence campaign," and had received a death threat from another inmate. Additionally, the confidential informants stated that Cowger also had an argument with Mendoza, reportedly a member of the Mexican Mafia, a prison gang, and had forced Mendoza to "back down" in front of other inmates. According to the confidential informants, the Mexican Mafia met shortly after Cowger's confrontation with Mendoza and "put out a contract" on Cowger. The confidential informants positively identified Vallez and Mendoza as Cowger's assailants and told the authorities that Fiaalii was playing cards at the time of the stabbing. Moreover, the investigating officer determined that Mendoza fits the description of the second inmate seen by Officer Kaffenberger.

On March 19, 1981, Mendoza was served with notice of an institutional discipline complaint charging him with violating prison regulations in murdering Cowger.[1] A hearing date before the Institution Disciplinary Committee ("IDC") was set and Mendoza was informed of his rights in writing before the IDC including his right to representation by a staff member, the right to call witnesses and to present documentary evidence on his behalf, the right to attend the hearing, and the right to be advised of the Committee's decision and the facts supporting the decision. These rights were given to Mendoza in an "advisement of rights" form. Mendoza was also informed that the incident had been referred to the FBI for "investigation and possible prosecution."

The IDC hearing was held on April 3, 1981. Mendoza refused to appear before the IDC, did not request a staff representative, did not submit a statement or documentary evidence, and failed to request the Committee to call witnesses on his behalf. The IDC reviewed a 31-page investigation report prepared by Officer Christie, the prison investigator. The investigative report stated that, "information was obtained from confidential sources and must remain anonymous to assure the safety of those sources." Christie submitted a confidential report to the chairman of the IDC identifying the confidential informants and reciting that they had previously given reliable information.[2] The IDC found Mendoza

---

1. The Incident Report advised Mendoza:

"On Saturday, March 14, 1981, at approximately 5:20 pm, inmate Cowger, Nathan Edward, Reg. No. 50295–060 was stabbed to death in his cell, F–A–1. An investigation of that incident reveals that you did stab inmate Cowger repeatedly, resulting in the death of inmate Cowger. You were assisted in the assault on Cowger by inmate Vallez, Jose Ramon, No. 31758–019.
The incident has been refered [sic] to the FBI for investigation and possible prosecution."

2. Christie's confidential report was submitted to this court as an *in camera* exhibit. An examination of this report reveals that if we were to discuss the information contained in the report,

guilty and stated that it relied on the following evidence in reaching that determination:

> "Extensive investigation was conducted by Mr. Christie, SIS and said investigation contained information from confidential and reliable sources which identified inmate Mendoza as one of two inmates that killed inmate Cowger. This ocurred [sic] at approximately 5:20 p.m. 3/14/81, inmate Mendoza and another inmate repeatly [sic] stabbed inmate Cowger in F–A–1 Cowger's cell. Confidential sources are known by this chairman to be reliable. This incident report was delayed because of FBI investigation."

The IDC ruled that Mendoza should lose 360 days of accumulated good time and be committed to disciplinary segregation for sixty days.

Mendoza and Vallez subsequently were indicted and tried for Cowger's murder before a jury in the United States District Court for the Southern District of Illinois. Vallez was found guilty and Mendoza was acquitted. During discovery, Mendoza obtained memoranda from the government indicating that Kaffenberger initially believed that the second assailant was Fiaalii and FBI memoranda recording an eye witness denying seeing the stabbing in his first interview with the investigating agents but giving a detailed description of the assault at a later date.

On August 3, 1983, Mendoza filed a petition for habeas corpus in the federal court attacking the loss of his good time and his commitment to disciplinary segregation. The matter was referred to a magistrate and the respondent filed a motion for summary judgment. In support of his motion for summary judgment, the respondent submitted an affidavit from Officer Christie stating that the confidential sources who identified Mendoza as the second assailant, "were known to be reliable as they had provided reliable information in the past."

Christie further affirmed that, "prior to petitioner's IDC hearing, affiant provided for the IDC chairman's review, handwritten notes taken from the interviews of several confidential informants. Finally, these notes presented the confidential informant information, informant names and established the informants' past [record] for reliability." According to the affidavit, Christie destroyed the notes after incorporating all the information contained therein in the formal confidential report to the committee chairman. After a hearing, the magistrate granted the respondent's motion for summary judgment. On appeal, Mendoza argues that he was denied due process because the disciplinary committee relied on the evidence given by confidential informants and, according to Mendoza, the record before the IDC and before the magistrate is insufficient to support the committee's determination that the confidential informants were reliable. Additionally, Mendoza alleges that the committee denied him due process by failing to disclose exculpatory evidence to him before the IDC hearing. Finally, the petitioner alleges that the magistrate denied him due process and effective representation of counsel in his habeas corpus proceeding in refusing to allow his counsel to review *in camera* material concerning the confidential informants.

## II.

### A. The Determination of Reliability

 Mendoza contends that the IDC deprived him of due process because, "[he] was not informed in advance of his IDC hearing of the fact that confidential, and unnamed, informants' information would be relied upon ... [and] has never ... been informed of the identity of such informants or the nature of their assertions." Additionally Mendoza claims that the IDC's determination that the confidential informants were reliable was defective because

---

it would lead to the identity of the confidential informants. We have examined this report and have concluded that revealing the confidential informants' names would endanger their lives.

Accordingly, specific details of the information given in the confidential report will not be set forth in this opinion.

there was no corroboration of the informants' testimony. Finally, Mendoza argues that "the discipline committee itself [must] make a determination of reliability and provide a written record of that determination." [3]

■■■■ Beginning with its decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court has established the minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings. Because "[p]rison disciplinary proceedings are not part of a criminal prosecution ... the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556, 94 S.Ct. at 2974.

"[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. 'Lawful incarceration brings about the necessary withdrawal or limitations of many privileges and rights, a retraction justified by the considerations underlying our penal system'.... The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights.... There must be a 'mutual accommodation between the institutional needs and objectives and the provisions of the Constitution that are of general application.'"

\* \* \* \* \* \*

" '[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.' ... Prison officials must be free to take appropriate action to ensure the safety of inmates and cor-

rections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."

\* \* \* \* \* \*

"[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."

*Bell v. Wolfish,* 441 U.S. 520, 545–47, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979) (citations omitted). The requirements imposed by the due process clause are "flexible and variable dependent on the situation being examined" and are "shaped by the consequences which will follow their adoption." *Id.* at 560, 567, 99 S.Ct. at 1885, 1888. "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action." *Id.* at 560, 99 S.Ct. at 1885. The inmate's rights to confrontation and to present witnesses at a disciplinary hearing are "necessarily circumscribed by the penological need to provide swift discipline in individual cases ... [and

---

**3.** Mendoza also argues that the IDC violated his due process rights because the prison staff investigator did not appear as a witness at the hearing and because the IDC allegedly did not make a determination that the specific informants were reliable. An examination of the record reveals that the investigator submitted a 31-page report summarizing his investigation to the committee. The magistrate held, and we agree, that due process does "not forbid the use of facts not presented at the formal hearing." *See Baxter v. Palmigiano,* 425 U.S. 308, 322 n. 5, 96 S.Ct. 1551, 1560 n. 5, 47 L.Ed.2d 810 (1976).

Moreover, because prison inmates' right to confrontation and to cross examine adverse witnesses in prison disciplinary hearings are limited to insure institutional safety, the committee is not required to receive testimonial rather than documentary evidence. *See id.* Furthermore, the IDC stated that the investigative report contained information from "confidential and reliable sources" and that "confidential sources are known by this chairman to be reliable." Thus, the record fails to support Mendoza's contention that the IDC did not make a determination of reliability.

by the] very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, —— U.S. ——, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985), *citing Baxter*, 425 U.S. at 321, 96 S.Ct. at 1559; *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2974. The prisoner's rights to call witnesses, to present evidence, and to confrontation may be circumscribed and even denied if exercising these rights would be "unduly hazardous to institutional safety or correctional goals." *Ponte*, 105 S.Ct. at 2195; *Baxter*, 425 U.S. at 321, 96 S.Ct. at 1559; *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979. Prison administrators must be accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

■■■ The government interest in institutional safety and an efficient disciplinary system are especially implicated when inculpatory information is provided by confidential informants because, "revealing the names of informants ... could lead to the death or serious injury of some or all of the informants." *McCollum v. Miller*, 695 F.2d 1044, 1048 (7th Cir.1982). Balanced against the government interest in protecting confidential informants and maintaining prison security is the prisoner's interest in a disciplinary hearing that is, "[n]ot so lacking in procedural safeguards that they create substantial doubt that these prisoners committed the offenses for which they were disciplined." *Jackson v. Carlson*, 707 F.2d 943, 948 (7th Cir.1983). To protect the inmate's interest in a fair hearing, our court requires some indication of the reliability of confidential informants when confidential information is the basis for a prison disciplinary decision. *Dawson v. Smith*, 719 F.2d 896, 899 (7th Cir.1983). The reliability of confidential informants may be established by: (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary commit-

tee, *McCollum*, 695 F.2d at 1049; (2) corroborating testimony, *Jackson*, 707 F.2d at 948; (3) a statement on the record by the chairman of the disciplinary committee that, "he had firsthand knowledge of the sources of information and considered them reliable on the basis of 'their past record of reliability,' " *Id.* at 948; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant. *Dawson*, 719 F.2d at 899. *In camera* review of a confidential report documenting the reliability of a prison informant determines: (1) whether providing the inmate with "more specific factual information ... would seriously risk exposing the confidential informant's identity;" (2) whether the confidential report, "contains ... sufficient additional information to bolster the reliability of the [confidential] information;" or (3) whether the disciplinary committee "adopt[ed] the credibility determination made by the prison investigator." *Id.* Our review of the determination of reliability is deferential because, "it is inherently dangerous to even attempt to determine the reliability of an informant since such effort could jeopardize lives and the willingness of informants to continue providing information." *Id.* Prison officials are given broad discretion when balancing the inmate's due process interests against the government's interests in institutional safety and an efficient disciplinary system. *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir.1981). The findings of the prison disciplinary board must be supported by some evidence in the record. *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill*, —— U.S. ——, 105 S.Ct. 2768, 2770, 86 L.Ed.2d 356 (1985). Judicial review determines "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 105 S.Ct. at 2774.

■■■ Initially we address Mendoza's contention that he was denied due process because, "[he] was not informed in advance of his IDC hearing of the fact that confidential, and unnamed, informants' informa-

tion would be relied upon ... [and] has never ... been informed of the identity of such informants or the nature of their assertions." The decisions in *Wolff, McCollum, Jackson* and *Dawson* unequivocally establish that Mendoza does not have a due process right to be informed of the identity of the confidential informants; the decision whether to reveal their identities is committed to the sound discretion of prison authorities. As to the alleged requirement of prior notice of the use of confidential information, an examination of the regulations governing federal prison disciplinary hearings reveals:

> "The [prison] investigator shall ... thoroughly investigate the incident. The investigator shall record all steps and actions taken on the Incident Report and forward all relevant material to the staff holding the initial hearing. The inmate does not receive a copy of the investigation. However, if the case is ultimately forwarded to the Institution Discipline Committee, the Committee shall give a copy of the investigation and other relevant materials to the inmate's staff representative for use in presentation on the inmate's behalf."

28 C.F.R. § 541.15(b)(2) (1984). Thus, if Mendoza had requested a staff representative, the staff representative would have been given a copy of the investigative report and would have received advance notice of the report's reliance on confidential information. Therefore, Mendoza's failure to exercise his right to request a staff representative prevented him from receiving advance notice of the use of confidential information, rather than the IDC, as he claims.

 Furthermore, an examination of the record reveals that Mendoza's contention that the confidential information was uncorroborated is without merit. Confidential information may be corroborated by the testimony of prison employees who witness the incident. *Jackson,* 707 F.2d at 948. Kaffenberger's memorandum to Christie, written on the date of the murder, stated that he had closed the grill between the ranges after the stabbing, trapping

Mendoza in an out-of-bounds area (range). Furthermore, Christie determined that Mendoza fits the description of the second inmate seen by Officer Kaffenberger. Thus, the record reveals that the confidential informants' information was corroborated by a prison employee who witnessed the event.

 Mendoza additionally argues that due process requires, "the Disciplinary Committee itself [to] make a determination of [the] reliability [of confidential informants] and provide a written record of that determination." Specifically, Mendoza contends that the IDC must make "specific findings as to the reliability of each informant relied on and the factual basis for that finding [must] be stated on the record." Because he objects to our decision in *Dawson,* in which we reviewed *in camera* a confidential report documenting the reliability of a prison informant, Mendoza apparently believes that the factual basis for the reliability determination must appear in a *public* record. A similar issue was decided by the Supreme Court recently in *Ponte v. Real,* —— U.S. ——, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). Addressing the question of whether a prison disciplinary committee must "explain, in any fashion, at the hearing or later, why witnesses [requested by the inmate] were not allowed to testify," the court held:

> "Prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court that the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.'"

> \*　\*　\*　\*　\*　\*

> "[I]f prison security or similar paramount interests appear to require it, a court should allow at least in the first

instance, a prison official's justification for refusal to call witnesses be presented to the court *in camera.*"

*Ponte,* 105 S.Ct. at 2196, 2197. The officials' reason for deciding not to allow witnesses to testify must be "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" *Id.* at 2196. Like the decision to deny an inmate's request to call witnesses, the decision not to reveal the names of confidential informants is motivated by concerns for institutional safety and correctional goals.

"[T]he reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process."

*Wolff,* 418 U.S. at 562, 94 S.Ct. at 2977; *see also Dawson,* 719 F.2d at 898–99; *McCollum,* 695 F.2d at 1048–49. Submission of a confidential report for *in camera* review allows the court to determine whether the committee's actions were fair, i.e., whether the committee acted in an arbitrary and capricious manner by accepting confidential information without some indication of the reliability of the information. *See Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979 ("[T]he provision for a written record helps to insure that administrators ... will act fairly."); *McCollum,* 695 F.2d at 1049 (Information supplied by prison informants must be supported by some indication of reliability.); *Chavis,* 643 F.2d at 1287 ("[A] written statement ... protect[s] the inmate's sub-

stantive due process right not to be found guilty except by an appropriate quantum of evidence ... [and allows] a reviewing court [to] determine whether the finding of guilt was based on substantial evidence or whether it was sufficiently arbitrary as to be a denial of the inmate's due process rights."). We hold that the Due Process Clause does not require prison disciplinary committees to state specifically on a public record the factual basis for its finding as to the reliability of a confidential informant. Accordingly, we reaffirm the procedure followed in *Dawson;* prison officials may satisfy the inmate's right to procedural due process by documenting the reliability of the informant in a confidential report and submitting that report to the court for *in camera* review.

 The investigative report prepared by Officer Christie stated that, "information was obtained from confidential sources and must remain anonymous to assure the safety of those sources." We have reviewed and examined in depth *in camera* the confidential report documenting the reliability of the confidential informants and have conclusively determined that the well being of other individuals as well as institutional safety may very well be impaired by its release; thus, the record reveals that the IDC's decision not to reveal the confidential informants' names was motivated by concerns for institutional safety. *Cf. Dawson,* 719 F.2d at 899 (*In camera* review determined that providing the inmate with "more specific factual information ... would seriously risk exposing the confidential informant's identity.") Moreover, the confidential report identifies the informants and states that the informants had given reliable information in a specific past incident. Furthermore, another named informant established his reliability in revealing to the authorities the location of contraband weapons stashed in the prison unit.[4] Thus, our *in camera* review

---

**4.** As we read the dissent, its thrust is that the confidential report did not contain sufficient additional facts to support the IDC's determination that the confidential informants were reli-

able. Such an argument invites a response detailing the specifics of the report but, a response cannot be made for to do so would disclose information that might very well reveal the

established that the confidential report contains more than sufficient additional information to bolster the reliability of the confidential information and supports the conclusion that the IDC adopted the credibility determination made by the prison investigator. We hold that the confidential report more than satisfies the requirements mandated by *Dawson* and fulfills Mendoza's right to procedural due process. Moreover, the investigating officer provided a sufficient warrant of reliability by stating in his affidavit that: the confidential informants have provided reliable information in the past; he had given material to the IDC chairman identifying the informants in supporting his findings of reliability; and, that his confidential report submitted both to the Committee and to the court incorporated his material documenting the informants' reliability. Finally, the information given by the confidential informants was corroborated by Officer Kaffenberger. Upon a complete review of all the facts and circumstances surrounding the stabbing and the applicable case law, we hold that Mendoza was not denied due process by the IDC's refusal to reveal the confidential information that would lead to the identity of the confidential informants.

## B. Exculpatory Evidence

During the discovery phase of his trial for Cowger's murder, Mendoza did receive from the prosecution not only Kaffenberger's memorandum but also three FBI memoranda documenting interviews with inmates. Kaffenberger's memorandum, written on the day of the stabbing, indicated that he originally believed the second inmate to be Fiaalii. In his initial interview with the FBI, inmate Leonard Veale denied observing the incident and stated that he could not provide information about possible suspects. In his second interview, some fourteen months after the murder, Veale identified Mendoza as the second assailant and gave the agents a detailed description of the stabbing. In the third memorandum, inmate Mackie Smothers

identity of the informants and endanger their

stated that he did not see Mendoza while he was on the out-of-bounds range. Kaffenberger's memorandum was provided to the IDC as part of Christie's 31-page investigative report. During the hearing on the motion for summary judgment, the magistrate determined that the IDC did not have the FBI reports at the time it found Mendoza guilty of Cowger's murder. Mendoza argues that he, "was entitled to the revelation of this exculpatory evidence at the time of his IDC hearings, and he had a separate constitutional right to have the IDC consider all relevant evidence."

In *Chavis v. Rowe*, 643 F.2d 1281 (7th Cir.1981), our court held that the Due Process Clause required disclosure of exculpatory evidence or its substance to the defendant in prison disciplinary hearings. *Id.* at 1286. This rule was adopted to insure, "that the trier of fact considers *all* relevant evidence in reaching a conclusion as to the guilt or innocence ... and ... the right of the defendant to prepare the best defense he can and bring to the disciplinary committee's [attention] any evidence helpful to his case." *Id.* Our court adopted the materiality standard of *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) for determining whether the disciplinary committee must turn over evidence even though the defendant fails to request it specifically. Evidence is material if it, "creates a reasonable doubt that did not otherwise exist." *Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401.

█ Turning first to Kaffenberger's memorandum, initially we note that the memorandum was reviewed by the IDC, thus satisfying the policy of insuring that the trier of fact consider all relevant evidence. Therefore, the only potential issue raised by the Kaffenberger memorandum was whether the IDC's alleged failure to turn over the memorandum impaired Mendoza's ability to prepare a defense to the disciplinary charge. We need not decide whether this evidence was material because, as recited earlier, regulations governing disciplinary proceedings in federal

lives.

prisons provide that investigative reports shall be given to the inmate's staff representative if the inmate requests the assistance of a staff representative. 28 C.F.R. § 541.14(b)(2). Thus, Mendoza would have known of this allegedly exculpatory evidence if he had availed himself of proper, established procedures. We see no reason to disregard established procedures by imposing a requirement that investigative reports be turned over to inmates who decline to participate in IDC hearings. Accordingly, based upon Mendoza's failure to exercise his right to request a staff representative, we hold that he was not denied due process in not obtaining Kaffenberger's memorandum before the IDC hearing.

Mendoza argues that he was deprived of due process because he did not have the FBI reports before the IDC hearing and clearly glosses over the fact that the IDC likewise did not have the benefit of the reports. In effect, Mendoza argues that even though he had not requested the documents, the FBI was required to turn over the reports to him for use in the disciplinary hearing. Additionally, Mendoza implies that the IDC was required to provide him information in the possession of the FBI. An examination of the record fails to disclose a request from Mendoza or a staff representative to the FBI for their investigatory files. We have not been presented with any case law in support of this novel theory of law nor are we aware of any requiring the FBI, or any law enforcement agency for that matter, to spontaneously turn over material to a defendant in a civil proceeding, such as a prison disciplinary hearing, when the defendant fails to request the materials and we refuse to impose such a rule. As to any theoretical obligation on the IDC to obtain information from the FBI, we note that the rule requiring prosecutors in criminal proceedings to disclose information is limited to information known to the prosecution. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The prison staff conducts an investigation of prison incidents separate from any FBI investiga-

tion. 28 C.F.R. § 541.14(b). Thus, the FBI is not a part of the disciplinary prosecution, they have no obligation to turn over their files to the disciplinary committee, and their alleged failure to disclose material cannot be attributed to the disciplinary committee. *Cf. Barbee v. Warden,* 331 F.2d 842 (4th Cir.1964). The IDC cannot be held responsible for information in the possession of the FBI. *See United States v. Diecidue,* 448 F.Supp. 1011 (N.D.Fla.1978) (United States Attorney could not be charged with knowledge possessed by a state investigative agency, even though that agency participated in a "joint task force" with the FBI, where federal and state prosecutors depended almost exclusively on their own agencies in presenting their cases.). Moreover, it is not the role of this court to impose on prison officials a requirement that they obtain information from the FBI.

> "[C]ourt[s] should not 'second-guess the expert administrators on matters on which they are better informed.... Concern with minutiae of prison administration can only distract the court from detached consideration of the one overriding question presented to it: does the practice or condition violate the Constitution?' "
>
> \* \* \* \* \* \*
>
> "But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."
>
> \* \* \* \* \* \*
>
> "[O]ur decisions have time and time again emphasized that ... unguided substitution of judicial judgment for that of expert prison administrators ... is inappropriate."

*Bell v. Wolfish,* 441 U.S. at 544, 548, 554, 99 S.Ct. at 1876, 1879, 1882 (citations omitted). We do not have the expertise, and we

refuse to expand the constitution as compelling us, to dictate rules governing the exchange of information between prison and FBI officials. We hold that Mendoza was not denied due process by the IDC's alleged failure to turn over FBI reports which it did not possess.

### C. The Habeas Corpus Proceeding

At the hearing on the motion for summary judgment, the respondent submitted Christie's confidential report documenting the reliability of the informants to the magistrate for *in camera* review. Mendoza's attorney objected and asked for a protective order allowing him to review *in camera* material "under such conditions as the court might deem appropriate." The magistrate denied the attorney's request to view the material, but promised to "review the material and make a preliminary determination as to whether these materials are, in fact, confidential or involved matters of safety or security...." On appeal, Mendoza, attempting to expand the ruling case law, argues that prison officials should be required to prove to the district court that releasing the confidential information to an inmate or his attorney would pose a threat to security. Mendoza asserts that the confidential information "should be released to the petitioner and/or his attorney under such terms and conditions as are required by the demonstrated security concerns." According to Mendoza his rights to due process and effective representation of counsel were denied both in the district court and in this court by the magistrate's alleged failure to follow the procedure he outlines because, "the bulk of the evidence relied upon by the IDC and the district court is unknown both to the petitioner and his attorney."

 In *McCollum*, our court addressed the issue of whether to allow the inmate's attorney to read an investigative report containing confidential information:

"We have no reason to believe that his counsel would give Ramirez-Rodriguez the names of the informants, or information from which those names could be deduced, but we do not know whether it would be safe to allow inmate's counsel access to such reports as a general rule and we do not think the courts or prison officials should try to decide which lawyers are trustworthy."

*McCollum*, 695 F.2d at 1049. We remanded the case to the district court for it to determine, "what feasible safeguards can be implemented to insure minimal due process at the United States Penitentiary at Marion in disciplinary hearings where the charges stem from information supplied by confidential informants and where the notice provided to the inmate is not detailed in terms of date, time, and place of the alleged incident." *McCollum v. Miller*, No. 81–C–4157, slip op. at 1 (S.D.Ill. May 7, 1985). The district court held a hearing in which "Marion officials testified as to the feasibility of certain due process safeguards suggested by the Appellate Court." *Id.* Addressing the issue of whether the inmate's counsel or staff representative should be given access to an investigative report summarizing the informants' statements, the court held that it, "has no reason to believe that such counsel or staff member would have the sensitivity necessary to omit reference to any information which may inadvertently reveal the identity of the informant." *Id.* at 4 n. 2. Accordingly, we decline to adopt a general rule allowing inmates' counsel access to investigative reports containing confidential information.

As set forth earlier in this opinion, we conducted an *in camera* review of the confidential report submitted to the magistrate to determine, *inter alia*, whether the IDC's decision not to reveal the confidential informants' names was motivated by concerns for institutional safety (*cf. Ponte*, 105 S.Ct. at 2196) because revealing more specific factual information would seriously risk exposing the confidential informants to serious injury and, all too frequently, death. (*cf. Dawson*, 719 F.2d at 899). Our extensive and exhaustive *in camera* review of the confidential report reveals that the magistrate properly decided to withhold the material from Mendoza's attorney. In short, there is no further information in the record that can be released to Mendoza. Thus, Mendoza has received the procedural

protection for which he argues: judicial review of the prison authority's decision not to release the information and the determination of what material could be released.

The decision of a prison disciplinary committee will be upheld if, "there is any evidence in the record that could support the conclusions reached by the disciplinary board." *Hill,* 105 S.Ct. at 2774. After reviewing the evidence, the magistrate held that there was substantial evidence to support the IDC's finding of guilty. We agree.

The judgment of the magistrate is Affirmed.

SWYGERT, Senior Circuit Judge, dissenting.

The majority holds that the petitioner was not denied due process because (1) the record contains sufficient indicia of the reliability of the confidential informants; (2) the petitioner waived his right to receive any exculpatory material by not appearing at the disciplinary proceedings; and (3) the magistrate properly determined that the petitioner's counsel should not be permitted to review the *in camera* material. Although I have reservations about the majority's analysis of the last two issues,[1] I dissent only as to the first.[2] In my view, the administrative record and the *in camera* submission fail to demonstrate that the Institutional Disciplinary Committee ("IDC") made a bona fide reliability determination or to support the reliability determination apparently adopted by the IDC. I would therefore reverse the grant of summary judgment.

**I**

The majority acknowledges that this circuit has held that in order to protect the

---

**1.** In particular, I believe that some parts of the *in camera* submission should have been released to the petitioner and his counsel since it contained information that was revealed to the petitioner before or at his criminal trial.

It is also questionable whether the Institutional Discipline Committee ("IDC") has provided a "written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action." *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974), quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). The "incident report" of the IDC reads:

> Extensive investigation was conducted by Mr. Christie, SIS [special investigative supervisor] and said investigation contained information from confidential and reliable sources which identified inmate Mendoza as one of two inmates that killed inmate Cowger. This occurred at approximately 5:20 p.m. 3/14/81, inmate Mendoza and another inmate repeatedly stabbed inmate Cowger in F–A–1 Cowger's cell. Confidential sources are known by this Chairman to be reliable. This incident report was delayed because of FBI investigation.

This one paragraph, standing alone, clearly is not the summary of reasons and evidence that *Wolff* requires. The statement that "confidential and reliable sources identified the petitioner as one of the killers" is a mere conclusion at best.

The incident report, however, also indicates that the IDC's decision was based on a report prepared by a prison investigative supervisor.

That report, which is part of the administrative record, contains information culled from confidential sources by the prison investigator, and it recites in some detail facts from which it could be inferred that the petitioner participated in the murder. It can be argued, therefore, that by incorporating by reference the prison investigator's report, the IDC has satisfied this requirement. But this circuit, at least implicitly, has rejected the view that incorporation by reference is sufficient to satisfy *Wolff. See Hayes v. Walker,* 555 F.2d 625, 631 (7th Cir.1977) (*"Hayes I"*) (finding that nearly identical statement of reasons and evidence "did not meet minimum due process requirements as set forth in *Wolff*"); *see also Hayes v. Thompson,* 637 F.2d 483, 489 (7th Cir.1980) (reaffirming *Hayes I* since nothing new was introduced on remand that cured constitutional infirmity of original statement of reasons); *Aikens v. Lash,* 514 F.2d 55, 60–61 (7th Cir.1975), *vacated on other grounds,* 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976), *reinstated as modified on other grounds,* 547 F.2d 372 (1976) (written statement must contain "findings of fact and conclusions based on substantial evidence"). Thus, the IDC's "written statement" is defective.

**2.** I agree with the majority that the petitioner was not entitled to receive the names of the confidential informants, either before or after the hearing, and that he waived his right to be notified in advance that confidential information would be relied upon. The nature of the confidential informants assertions would have been revealed to the petitioner if he had requested staff representation.

inmate's right to a fair hearing, when prison disciplinary action is based primarily upon information provided by confidential informants, the record must contain some indication of the reliability of the informants. *See Dawson v. Smith,* 719 F.2d 896, 899 (7th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984); *Jackson v. Carlson,* 707 F.2d 943, 948 (7th Cir.), *cert. denied sub nom. Yeager v. United States,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983); *McCollum v. Miller,* 695 F.2d 1044, 1048–49 (7th Cir. 1983). As the Eleventh Circuit recently observed, the purpose of this requirement is to ensure that prison inmates receive a genuine fact-finding hearing in which the finding of guilt is not based solely on uncorroborated, unreliable hearsay. *Kyle v. Hanberry,* 677 F.2d 1386, 1390 (11th Cir. 1982). "Consequently, to make a decision based on the factual evidence presented, part of the disciplinary committee's task must be to make a bona fide evaluation of the credibility and reliability of that evidence." *Id.* The task of the reviewing court is to examine the record to determine if the committee made such a bona fide evaluation. *Dawson,* 719 F.2d at 899. It does not review the record *de novo,* nor can it supply post hoc rationalizations when the IDC either fails to set forth sufficient evidence to demonstrate that it made such an evaluation or it gives grossly inadequate reasons.

## II

The majority holds that, when the IDC is unwilling because of institutional safety concerns to document on the record the confidential information and the factual bases of its reliability determinations, the IDC may demonstrate that it did not act in an arbitrary and capricious manner by relying on confidential information that bore no indicia of reliability in any one of four ways:

(1) demonstrate that the investigating officer swore to the truth of the report containing the confidential information and that he appeared to testify before the disciplinary committee (citing *McCollum,* 695 F.2d at 1049);

(2) demonstrate that there was sufficient corroborating testimony (citing *Jackson,* 707 F.2d at 948);

(3) identify a statement on the record by the chairman of the disciplinary committee that, "he had first-hand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability" (citing *Jackson,* 707 F.2d at 948); or

(4) submit for *in camera* review material documenting the investigator's assessment of the credibility of the confidential informant (citing *Dawson,* 719 F.2d at 899).

*See ante* at 1293.

Apparently conceding that the IDC is unable to make the required showing under methods (1)–(3),[3] the majority turns to the

---

**3.** The administrative record clearly does not contain the requisite showing of a bona fide evaluation. The incident report contains nothing more than a conclusory assertion of reliability. The investigative report, upon which the IDC relied, does not itself contain the requisite showing. There is no assertion in that report that the informants were reliable. *See Dawson v. Smith,* 719 F.2d 896, 899 (7th Cir.1983), *cert. denied,* 929 U.S. 466, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984) ("The prison investigator's incident report specifically recites that the source of the confidential information was 'considered to be reliable.' "). Furthermore, the investigating officer did not swear to the truth of that report nor was he called as a witness at the disciplinary hearing.

The corroborating testimony of Kaffenberger is also insufficient to demonstrate that the infor-

mants were reliable. That statement was only minimally probative of whether the petitioner may have been involved in the incident, because Kaffenberger trapped three other inmates "out of bounds" and because Kaffenberger initially identified Fiaalii as the other inmate involved in the incident. It is decidedly less corroborative than the statement made by the prison inmate in *Jackson v. Carlson,* 707 F.2d 943, 948 (7th Cir.), *cert. denied sub nom. Yeager v. United States,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 ( 983), who expressly identified the petitioner in that case.

Finally, there is no statement in the record by the chairman that satisfies the third method of demonstrating that the IDC made a bona fide evaluation of reliability.

fourth method, *in camera* review of a confidential report prepared by the prison investigator[4] who compiled the investigative report upon which the IDC relied. In so doing, the majority rejects the arguments of the petitioner that the IDC must make the reliability determination itself, i.e., it cannot adopt the finding of a prison investigator, and that the IDC must include the factual bases for that determination in the administrative record.[5] Although I believe that the petitioner's arguments carry substantial weight,[6] I do not address them because I would find that even under the approach adopted by the majority[7] the IDC has failed to demonstrate that it undertook a bona fide evaluation of the informants' reliability.

### A

In *Dawson* this court held that the IDC demonstrates that it undertook a bona fide evaluation of the confidential informant's reliability (or credibility) when the *in camera* material "contains more than sufficient additional information to bolster the reliability of the [confidential] information," *id.* at 899, and when it shows that the IDC

**4.** Only one of the documents, the prison investigator's July 18, 1981 memorandum, in the *in camera* submission is relevant to the analysis of whether the prison investigator made a reasonable reliability determination at the time of the hearing. The other documents contain information that was obtained long after the disciplinary proceeding. It is axiomatic that a reviewing court cannot uphold the decision of an agency on the basis of facts not contained in the record or post hoc rationalizations.

**5.** Petitioner's argument is not limited to a claim that the IDC failed to place the *names* of the confidential informants in the administrative record. There is no doubt that the petitioner is not entitled to this information. But that does not mean that the factual basis for the determination of reliability should not be placed somewhere in the administrative record. *See Kyle v. Hanberry,* 677 F.2d 1386, 1390 n. 2 (11th Cir. 1982).

**6.** The very purpose of requiring a disciplinary hearing is to ensure that the IDC does not make arbitrary assessments of guilt. That purpose is best fulfilled if the IDC, the factfinder, makes the reliability determination itself and is required to include the necessary facts for its determination in the administrative record. This procedure ensures the most thoughtful and detailed decisionmaking and affords the prison inmate a basis for challenging inaccurate determinations of guilt. In addition, judicial review is more meaningful when based on a complete and accurate record compiled before the habeas corpus proceedings have begun.

*Ponte v. Real,* — U.S. —, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), does not support the result reached by the majority. In *Ponte* the Court held that a prison disciplinary board was not required to place in the administrative record the reasons why it had refused to allow the inmate to call one of his proposed witnesses. In so doing, the Court expressly recognized that in *Wolff* it had placed specific parameters on the prison inmates rights to call and present wit-

nesses and that prison officials were allowed considerable latitude in deciding when to permit prison inmates to call witnesses. *Id.* at —, 105 S.Ct. at 2197. *See Wolff,* 418 U.S. at 566–67, 94 S.Ct. at 2979–80. However, it is clear that in *Wolff* the Court simply did not address what other procedures were constitutionally necessary as a check on the use by prison officials of confidential, and perhaps unreliable, prison information.

Furthermore, the Court in *Ponte* suggested that the prison officials' reasons for refusing to call the witness should, in most cases, be revealed in a public record. *See id.* at —, 105 S.Ct. at 2196 ("We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reasons why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by *presenting testimony in court* if the deprivation of a 'liberty' interest is challenged because that claimed defect in the hearing.") (emphasis added). Similarly, absent compelling circumstances which the IDC bears the burden of proving, *see Ponte,* — U.S. at —, 105 S.Ct. at 2199–2200 (Stevens, J. concurring); *Wolff,* 418 U.S. at 565, 94 S.Ct. at 2979, the prison officials' factual basis for accepting the confidential sources of information should appear in a public record.

Further support for the petitioner's argument can be found in the guidelines governing disciplinary hearings issued by Marion prison officials. *See infra* note 10. Those guidelines mandate, to the extent feasible, that the safeguards advanced by the petitioner here be followed in all disciplinary proceedings. Because *Wolff* requires that an inmate be afforded all due process safeguards that are feasible under the circumstances, these safeguards are required.

**7.** My analysis of this case under the majority's approach should not be considered as an endorsement of the four-part test adopted by the majority.

"adopt[ed] the credibility determination made by the prison investigator," *id.* Because the court in that case did not discuss the contents of the *in camera* submission, it is unclear what documentation of reliability the court believed was sufficient to "provide ... [the petitioner] with due process." *Id.*

It is clear, however, after *Ponte,* —— U.S. ——, 105 S.Ct. 2192 (1985), that the *in camera* submission must document with specificity the prison investigator's basis for concluding that the confidential information was indeed reliable in the *particular* case under investigation, and it must show that the prison investigator's conclusion was "reasonable," *see id.* at ——, 105 S.Ct. at 2196 (judicial review ensures that prison officials' reasons for refusing to call one of inmate's proffered witnesses are "logically related to preventing undue hazards"); *id.* at ——, 105 S.Ct. at 2201 (Marshall, J., dissenting) (*in camera* submission must contain the specific (contemporaneous) reasons why prison officials denied the prisoner the rights to call his witnesses so that reviewing court can decide if the prison officials' decision was based on permissible factors); *see also Kyle,* 677 F.2d at 1290; *Helms v. Hewitt,* 655 F.2d 487, 502 (3d Cir.1981), *rev'd on other grounds,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *cf. Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (in determining if an informant's statements may form the basis for a determination of probable cause the record must contain sufficient factual evidence to show that the tribunal could reasonably determine that the informant was believable and that the information provided it was itself accurate), particularly in cases such as the instant one where the *in camera* submission is the only document that purportedly contains the information necessary for a reviewing court to sustain the prison officials' reliability determination. A reviewing court simply cannot determine "whether the finding of guilt was based on substantial evidence or whether it was sufficiently arbitrary so as to be a denial of the inmate's due process", *Chavis v. Rowe,* 643 F.2d 1281, 1287 (7th Cir.), *cert. denied,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981), if the *in camera* submission does nothing more than make conclusory assertions regarding the informants' reliability. Nor can the court sustain the prison disciplinary action as "non-arbitrary" if the prison investigator's determinations of credibility are unreasonable.

The requirement of specificity does not jeopardize institutional safety. The prison investigator and the IDC are well aware that the confidential report will never be made public. This requirement will also protect against the very real danger of inmate contrivance and resulting inaccurate determinations of guilt. *See McCollum,* 695 F.2d at 1049. In addition, although the requirement does place a greater burden on prison officials, prison officials have already determined that this burden is not onerous and that it necessarily must be undertaken in order to ensure effective judicial review. *See infra* note 10.

## B

The majority finds that the *in camera* submission in this case "contains more than sufficient additional information to bolster the reliability of the confidential information...." *Ante* at 1296. I disagree. The prison investigator's *in camera* report merely identifies the confidential informants and state that all of these informants have previously given correct information (presumably to prison officials). The prison investigator only specifically identified one wholly unrelated incident in which less than all of the informants had given correct information. Thus, there was absolutely nothing in that report that suggested why the informants' identification of the petitioner should be believed or disbelieved in this particular case. In fact, some information given by the confidential informants was directly contradicted by specific evidence that was later uncovered by the prison investigator and that was eventually revealed to the petitioner.

The *in camera* submission also does not set forth any facts from which we can conclude that the IDC adopted the credibility determination made by the prison investigator. *See ante* at 1296. The only evidence in the record that indicates that the IDC accepted the credibility determination made by the prison investigator was the incident report in which the IDC stated that "[e]xtensive investigation was conducted by ... [the prison investigator] ... and said investigation contained information from confidential and reliable sources ..." The incident report revealed however that the IDC's findings regarding Mendoza's guilt was based on the *investigative report;* the investigative report, as the majority notes, is a comprehensive thirty-one page document, one and one-half pages of which is devoted to detailing the information uncovered by the prison investigator regarding the petitioner's alleged participation in the murder. But nothing in the administrative record shows that the confidential report was part of the investigative report.

In addition, the confidential information contained in the investigative report and the *in camera* submission differed significantly. In the investigative report, the confidential informant's detailed the petitioner's relationship with the victim and his participation in carrying out a "contract" on the victim. In the *in camera* submission, the confidential informants only identified the petitioner as the killer. Thus, it is not even clear that the confidential informants found to be reliable by the prison investigator are the same sources whose information formed the basis of the investigative report. And there is no suggestion in the investigative report that the confidential sources whose information formed the basis for that report were reliable. Nor was the investigator called as a witness at the hearing nor did he swear to the truth of the report. As this court recognized in *McCollum*, the "investigative report, however vivid and apparently true, is not, ... self-validating." 695 F.2d at 1049. There is simply no evidence that the prison investigator's credibility determination was adopted by the IDC.

The statement in the incident report that "[c]onfidential sources are known by this chairman to be reliable" adds nothing to this analysis. There is nothing in the record that shows the chairman's factual basis for this determination. The chairman might have his own personal source of knowledge, or he may have been merely making a conclusory assertion based upon his prior dealings with confidential informants within the system. It cannot even be inferred from this statement that the chairman was relying on the prison investigator's determination.

Thus, there are simply no facts contained in either the incident or *in camera* reports from which we can determine that the prison investigator made a reasonable reliability determination or that the IDC adopted the credibility determination of the prison investigator. *See Gomes v. Travisono*, 510 F.2d 537, 540 (1st Cir.1974) ("If the written statement is intended to withstand scrutiny and guard against misunderstanding it cannot indicate reliance on speculation or facts not in the record.").

Finally, the prison investigator's affidavit, submitted to the court long after the IDC hearing, does not cure the insufficiency of the incident and *in camera* reports. Although *Ponte v. Real*, — U.S. —, —, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985), suggests that reasons for a denial of a petitioner's constitutional rights may be given for the first time during habeas corpus proceedings,[8] those reasons, of course, cannot be constitutionally infirm. The affidavit presented here contains only the same conclusory assertions contained in the *in camera* report. The only difference

---

8. It is unclear from *Ponte* whether the Court intended to permit the prison officials to submit post hoc rationalizations. Justice Marshall assumed in his dissent that the Court was validating post-hoc rationalization presumably because if the reasons were not contained in the administrative record in the first instance a court would never know if the officials were offering post-hoc rationalization.

between the affidavit and the *in camera* submission is that in the affidavit the prison investigator has sworn to the truth. This post hoc attempt to validate the investigative and *in camera* reports does nothing to show that any proper determination of credibility had been made at the time of the hearing. Furthermore, although the prison investigator stated in the affidavit that he had given the IDC chairman his handwritten material identifying the informants and incorporating his material documenting the informants' reliability, nothing in the affidavit indicates that the handwritten material documented the reliability of the informants in any greater detail than did the *in camera* report.

In this case, then, there has simply been no showing that the prison investigator submitted to the IDC anything other than a conclusory finding of reliability that might have been adopted by the IDC. *See Kyle*, 677 F.2d at 1390–91. ("The government argues that it is enough for the IDC to know that the informant has a past record of reliability. That knowledge, however, is not on the record here. Both the investigator's report and the confidential report indicated that their sources were considered reliable, but neither one explained why. Indeed, there is nothing on the record to show that the IDC made any inquiry into reliability or that it was furnished with any information explaining the trustworthiness and credibility of the 'reliable sources.' ").

### III

The majority thus concludes that the only indication of reliability that prison officials need set forth is an unsworn *in camera* report that reveals the names of the informants and asserts that the infor-

mants have given "reliable information in the past" in a wholly unrelated incident.[9] This is simply an insufficient basis, however, from which this court can conclude that the IDC made a bona fide evaluation of the reliability of this evidence.

More importantly, the majority's result today conflicts with *Wolff v. McDonald*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). In *Wolff* the Court enumerated four procedural safeguards that it believed were essential to secure, at a minimum, some degree of procedural due process for the inmate. That enumeration, however, did not foreclose the "possibility that other procedures besides those specifically considered there may be required to ensure that a disciplinary committee's actions comport with due process." *Kyle*, 677 F.2d at 1389. *But see Dawson*, 719 F.2d at 899 (suggesting that only those procedures specifically mandated by the Supreme Court are required in prison disciplinary proceedings). In fact, *Wolff* specifically contemplated under its "mutual accommodation" principle that the inmate would be entitled to all facets of due process that are feasible within the security limitations of penological institutions. As this court recognized in *McCollum* and subsequent cases, one important element of due process is a decision that is not based on uncorroborated, unreliable, hearsay evidence. Although this circuit has suggested that reliability determinations at the United States Penitentiary at Marion are infeasible, *see Dawson*, 719 F.2d at 899, prison officials have decided, at least at the time of the hearing in this case, that detailed statements of facts (set forth in the administrative record) supporting the IDC's reliability determinations are in fact feasible at that institution.[10] *See McCollum v.*

**9.** The majority aptly notes that my difference with this result "invites a response detailing the specifics of the reports," *see ante* note 4, which it cannot undertake for fear of revealing certain confidential information. Under the *in camera* method of reviewing prison disciplinary proceedings adopted by this circuit, majority (and dissenting) opinions are necessarily drafted in vague, inconclusive language that gives the petitioner no hint of the identity of his accusers or the extent of the evidence marshalled against

him. Thus, prison disciplinary proceedings are now akin to "secret trials"; to the petitioner's continued protestations of innocence, first the IDC, then the district court, and finally the court of appeals answer that, based on secret knowledge available only to them, he is guilty.

**10.** Relevant sections of Policy Statement 5270.5 provide:

2. *BACKGROUND:* The Inmate Discipline Program Statement requires that ... IDC de-

*Miller,* Nos. 81–C–4157, 81–C–4208, 81–C–4172, 81–C–4237, Memorandum and Order at 4–5 (S.D.Ill. May 8, 1985). Thus, under *Wolff,* due process would seem to require more detailed reliability determinations than were made in the instant case. Therefore, we simply cannot uphold the prison disciplinary action taken in this case based upon the conclusory assertions of reliability made by the IDC and the prison investigator.

As the Supreme Court stated in *Ponte:*
[T]o hold that the Due Process Clause confers a circumscribed right on the inmate to call witnesses at a disciplinary hearing, and then conclude that no explanation need ever be vouched for the denial of that right, either in the disciplinary proceeding itself or if that proceeding be later challenged in court, would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion of the disciplinary board. We think our holding in *Wolff, supra,* meant something more than that.
*Id.* at ——, 105 S.Ct. at 2197.

The Due Process Clause confers on the inmate a right to a fair hearing and a decision by the factfinder, based on competent and reliable evidence. In this circuit, the IDC need now provide no rationale for its decision other than a conclusory asser-

tion in an unsworn *in camera* report that confidential reliable informants identified the inmate as the culprit. As a result, the prison inmate's rights to a fair hearing and a non-arbitrary decision have been transformed to "privilege[s] conferred in the unreviewable discretion of the disciplinary board." *McCollum's* reliability requirement is effectively eviscerated and *Wolff*'s holding that prison inmates have due process rights in prison disciplinary proceedings has been essentially gutted.

I would reverse the magistrate's grant of summary judgment for the defendant and remand, with directions that the IDC be ordered to conduct a disciplinary hearing that meets constitutional standards of due process.

---

cisions be based on substantial evidence.... Proper documentation of the information utilized in making these decisions is imperative for the initial disciplinary action as well as for later administrative or judicial review.

 . . . . .

4. *GUIDELINES:* When a disciplinary committee decision is based on confidential informant information, ... IDC shall state, on the hearing record, its finding as to the reliability of each informant relied on and the factual basis of that finding.

 . . . . .

The reliability of an informant must be established before the information provided may be used to support a finding by the ... IDC. Reliability may be determined by a record of past reliability or by other factors which reasonably convince the ... IDC chairman of the informant's reliability. The staff member providing the information to the committee shall include a written statement of the frequency with which the informant has provided information, the period of time during

which the informant has provided information, and the degree of accuracy of that information. If reliability is based on factors other than a history of reliability, those other factors supporting a determination of reliability must be clearly specified. Staff have an affirmative obligation to determine whether there is any basis for concluding that the informant is providing false information.

 . . . . .

All confidential information presented to the committee shall be in writing and must state facts and the manner in which the informant arrived at knowledge of those facts. If possible, the statement shall be signed by the informant. If the informant does not write a statement, the staff member receiving the information shall provide that information in language as close to the informant's as possible.... The committee chairman shall include, in the record of the hearing, a statement of the basis for finding that the information provided by the informant is credible.