**John CAMPBELL, George Scalf, Cleo Roy and Marty Shifflett, Petitioners–Appellants,**

v.

**Warden Gary HENMAN, Respondent–Appellee.**

**No. 90–2169.**

United States Court of Appeals, Seventh Circuit.

Submitted April 17, 1991.*

Decided May 9, 1991.

John Campbell, pro se.

---

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a),

Fed.R.App.P.; Circuit Rule 34(f). Appellants have filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

George Scalf, pro se.

Cleo Roy, pro se.

Marty Shifflett, pro se.

Claudia Jones, Asst. U.S. Atty., Office of the U.S. Atty., East St. Louis, Ill., for respondent-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

PER CURIAM.

On October 15, 1988, inmate Thomas Lamb was killed while incarcerated at the United States Penitentiary in Marion, Illinois. After conducting an investigation into the killing, a disciplinary hearing was held on January 10, 1989, and all four appellants were found guilty of the murder. As a result of this finding of guilt, the appellants were punished by losing all accrued good time, serving 60 days in disciplinary segregation, and by placement in the control housing unit for five years. The appellants filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2241, alleging that they were denied their right to due process of law under the fifth and fourteenth amendments of the United States Constitution because the prison officials withheld exculpatory information.[1] The district court denied the petition by granting summary judgment to the respondent. This timely appeal followed.

I.

In their petition, the appellants alleged that several prison correctional and medical personnel and over 20 inmates were interviewed in reference to the death of Thomas Lamb. The petitioners contended that they requested, but did not receive, any reports documenting these interviews, either in full or in substance. The appellants posit that these reports contain exculpatory information. Because they were denied access to these reports containing exculpatory information, the petitioners maintain that they were unable to prepare their own defenses.

The respondent brought a motion for summary judgment, arguing only that no exculpatory information existed. In his motion, the respondent noted that the Disciplinary Hearing Officer (DHO) at the January 10, 1989 hearing stated that no such information existed. The Regional Director and Central Office Assistant Director also came to the same conclusion when deciding the petitioners' administrative appeals.

The respondent's motion for summary judgment was referred to a United States Magistrate Judge for a recommendation. The magistrate recommended granting summary judgment to the respondent. In discussing the issue concerning exculpatory evidence, the magistrate stated:

A factual dispute is apparent on this issue. Petitioners contend that exculpatory material was withheld. Respondent contends that there was no exculpatory material. However, the dispute does not preclude summary judgment because petitioners were not constitutionally entitled to pre-hearing disclosure of exculpatory evidence even if it did exist.

Appendix for Petitioners–Appellants, p. 2. The magistrate noted that this court favors the disclosure of exculpatory evidence prior to a prison disciplinary hearing. See Chavis v. Rowe, 643 F.2d 1281, 1285–86 (7th Cir.1981), cert. denied sub nom., Boles v. Chavis, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981). However, relying on our decision in Mendoza v. Miller, 779 F.2d 1287 (7th Cir.1985), cert. denied, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986), the magistrate found that the petitioners forfeited their opportunity to receive exculpatory evidence, if any existed, by failing to request the assistance of a staff representative who would have had access to such material.[2]

---

1. Petitioners alleged several other violations. However, because they only appeal the purported denial of access to exculpatory material, we need not discuss their other contentions.

2. The magistrate's report and recommendation stated:

Petitioners waived their right to the assistance of a staff representative, which would have ensured indirect access to any exculpatory material. Prison regulations in effect at the

The petitioners filed objections to the magistrate's recommendation, and the decision was reviewed by the district court. The district court stated:

Petitioners misread the Report and Recommendation of the magistrate if they believe it indicates the existence of *Brady* material. The magistrate has correctly determined that, even if such material did exist, information which could lead to the identity of confidential informants is not to be revealed once it has been determined to be reliable. *See Mendoza v. Miller,* 779 F.2d 1287 (5th [sic] Cir.1985).

The district court conducted an *in camera* review of the material and concluded that the information was reliable and that sufficient evidence existed to find the petitioners guilty of the conduct charged. The district court did not, however, make a finding concerning the existence or non-existence of exculpatory evidence.[3]

## II.

■ In *Chavis v. Rowe,* 643 F.2d 1281 (7th Cir.1981), this court held that the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings. In *Chavis,* we identified two purposes of the *Brady* rule: to insure that the trier of fact considers all evidence relevant to guilt or innocence and to enable a defendant to "prepare the best defense he can and bring to the court's attention any evidence helpful to his case." *Id.* at 1286. We also recognized that imposing such a rule could have adverse effects on the state's interest in "maintaining institutional

peace and security." *Id.* Therefore, we concluded that "fair play" requires the disclosure of exculpatory evidence to an inmate, although we recognized that the disclosure may be limited to its substance in situations where disclosure of the entire report could create security problems.

This court has recognized that there may be some situations in which the disclosure of any information may create severe security problems. In such situations:

[the] costs outweigh in our judgment the benefits, substantial as they would be, of giving inmates accused of serious offenses the information they need to prepare an effective defense.... The inmates will not know what the evidence is against them, so they will not be able to counter it with evidence of their own.... But if the usual safeguards of an adversary procedure are unavailable it is all the more important that there be other safeguards....

*McCollum v. Miller,* 695 F.2d 1044, 1048 (7th Cir.1982) (*McCollum I*), *later appeal, McCollum v. Williford,* 793 F.2d 903 (7th Cir.1986).

The district court held that once a determination is made that the information provided by confidential informants is reliable, the analysis stops because material which could lead to the identity of a confidential informant may not be revealed. The court, however, never addressed the issue of whether exculpatory evidence existed to which the petitioners did not have access. Instead, the district court's approach to this issue included only the inquiry generally undertaken when deciding whether there

---

time of the disciplinary proceedings required that a copy of the investigation and other relevant material be provided to the staff representative for use in presentation on the inmate's behalf. 28 C.F.R. § 541.14(b)(2) (1988). The petitioners did not take advantage of regulations which would have provided access to any exculpatory material, and they may not now complain that the material was denied.

We note that the respondent did not raise this argument in his motion for summary judgment. In that motion, the respondent only argued that no exculpatory evidence existed. Therefore, the respondent may have waived the argument relied upon by the magistrate. However, our de-

cision in this case makes it unnecessary for us to decide this question of waiver.

**3.** It is not clear from the record whether the *in camera* material submitted to the district court contains the entire investigatory file, including statements from witnesses not relied upon by the DHO in finding the petitioners guilty of the offense of killing. Our decision in this case makes it unnecessary for us to review the *in camera* material. We note only that the *in camera* filing should contain the entire investigation file, not only the documents which support the finding of guilt.

is sufficient evidence to support a prison disciplinary review board's finding of guilt. It did not address the procedural due process question raised by the petitioners. This court has recently noted the distinction.

A prison disciplinary body may not arbitrarily refuse to consider exculpatory evidence offered by a prisoner simply because the record already contains the minimal evidence suggesting guilt required by [*Superintendent, Mass. Correctional Institution, Walpole v.*] *Hill* [472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)]. In this connection, where a prisoner believes he was denied a meaningful opportunity to contest the charges against him due to a disciplinary board's refusal to consider evidence or allow the prisoner access to relevant material, the challenge is one of procedural due process rather than sufficiency of evidence. *Viens v. Daniels,* 871 F.2d 1328, 1336 n. 2 (7th Cir.1989), *reh'g denied,* 1989 U.S.App. Lexis 9017 (7th Cir.1989).

The petitioners requested the disclosure of exculpatory materials. Prison officials responded by stating that no exculpatory information exists. The petitioners received the same answer at every administrative level of review. The district court failed to review the file to determine whether any exculpatory information existed. Minimum due process requires that the district court conduct an *in camera* review of the entire investigatory file (not only the material relied on to find guilt) to determine whether or not exculpatory information existed.

▮ Similarly, the magistrate failed to make a specific finding as to whether any exculpatory evidence existed. The magistrate relied on our opinion in *Mendoza, supra,* and recommended that because petitioners decided not to have a staff member represent them, they forfeited their opportunity to receive any exculpatory material. We think that *Mendoza* is distinguishable from this case. In *Mendoza,* the inmate failed to participate in any aspect of the disciplinary proceeding. Unlike *Mendoza,* the petitioners actively participated in their hearings. They filed preliminary documents requesting evidence, and appeared at their hearings in an attempt to defend themselves against the charges. Although the language in *Mendoza* seems to suggest that the inmate waived his right to exculpatory evidence because he did not request a staff representative, we believe that such a reading is too broad. Instead, *Mendoza's* due process rights were not violated because he failed to participate in any way. "We see no reason to disregard established procedures by imposing a requirement that investigative reports be turned over to inmates who decline to participate in IDC hearings." *Mendoza,* 779 F.2d at 1297. Accordingly, we do not believe that an inmate waives his opportunity to receive exculpatory information merely because he exercises his option not to have a staff representative.

We REVERSE and REMAND this action to the district court for a determination of whether exculpatory evidence existed and for any other proceeding consistent with this opinion.