**Fred KYLE, Petitioner-Appellant,**

v.

**Jack HANBERRY and Norman Carlson, Respondents-Appellees.**

**No. 80–7974.**

United States Court of Appeals, Eleventh Circuit.

June 11, 1982.

Ralph Goldberg, Atlanta, Ga., for petitioner-appellant.

Barbara A. Harris, Asst. U. S. Atty., Atlanta, Ga., for respondents-appellees.

Before MORGAN, HILL and KRAV-ITCH, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In a petition for habeas corpus relief, Fred Kyle alleged that an administrative determination by the Inmate Disciplinary Committee ("IDC") at the Atlanta Federal Penitentiary was arbitrary and capricious and violated his constitutional right of due process and that a determination by the IDC at the Lewisburg Federal Penitentiary violated his due process and first amendment rights. The district court, acting upon the recommendation of a magistrate, entered summary judgment in favor of the respondent government officials. We reverse and remand for further proceedings.

## I. The Atlanta Incident

### A. The Facts

On October 7, 1979, an inmate at the Atlanta Federal Penitentiary was assaulted. A prison supervisor reported the assault to the IDC after a correctional officer spotted the inmate, William Eaton, washing blood from his face at a prison water fountain at approximately 11:30 A.M. An investigating officer concluded that Kyle was the perpetrator, and Kyle was charged with the incident.

Kyle's alibi was that he had been in religious services the morning of the assault. Kyle requested that four witnesses testify in his behalf at the IDC hearing; two inmate witnesses did so and one inmate witness declined to appear. Kyle expected the final witness, the prison chaplain, to verify his alibi, but the chaplain turned out to be an adverse witness and was not called. At the hearing, the two witnesses testified that they had seen Kyle in the chapel area about 11:30 A.M. on October 7. Kyle testified that he had been in the chapel from 8:15 until 11:30 A.M. and that he was in the Muslim services learning to operate a video TV camera at the time of the assault.

The IDC found Kyle guilty as charged. Based on the severity of the offense and Kyle's past record, the IDC ordered that Kyle be confined in the segregation unit at the penitentiary for 60 days, ordered the forfeiture of 435 days of statutory good-time, and recommended disciplinary transfer. The report of the IDC curtly described the "specific evidence relied on to support findings" as follows:

> Officer's statement that Kyle was identified as assailant. Confidential report which identified Kyle as assailant. Investigation and attached memorandum.

The officer's statement referred to in the IDC's report was apparently a part of the correctional supervisor's memorandum reporting the incident to the IDC on the day of the assault. Noting that Kyle had been "tentatively identified" as the assailant, the report stated that "reliable sources" had claimed the incident with Eaton resulted from Kyle's conduct and language in front of visitors on the day of the assault.

The confidential report referred to by the IDC was a memorandum from the prison chaplain to the associate warden. In that memo, the chaplain described the assault as it was reported to him by a "reliable inmate source." The unidentified source had stated that Kyle had changed clothes in his cell after assaulting Eaton, and he had explained that the assault stemmed from Eaton's conduct at a banquet. According to the chaplain's source, Kyle blamed Eaton's conduct as the cause for the prison no longer allowing females from a local CTC to visit the penitentiary. The IDC report indicates that there was no confidential information considered by the IDC that was not provided to Kyle, yet he has stated that he was not told of the chaplain's report.

The investigator's report was unavailable to Kyle and he was unaware of its contents.[1] Besides discussing Kyle's inability to prove his whereabouts at the time of the assault, the report indicated that a pair of bloody fatigue pants had been found in Kyle's cell.

Kyle began his appeal by filing a request for administrative remedy. Through the response to his request, Kyle learned that the bloody pants had been considered by the IDC and had corroborated the confidential report. The parties dispute whether Kyle exhausted his administrative appeals.

The magistrate assumed that exhaustion requirements had been met, and he found Kyle's arguments for relief inadequate as a matter of law. The magistrate wrote:

---

1. Under the established procedure followed by the IDC, an inmate charged with a violation of institution rules has a right to present his case through a staff representative that has access to the investigation materials, including confidential information. The appellees' brief, citing the prison's records, states that the representative requested by Kyle was unavailable, and that Kyle did not insist upon another. The IDC hearing report indicates to the contrary—that Kyle's requested staff representative appeared at the proceeding; appellee Hanberry's denial of Kyle's request for administrative remedy relies in part on that information. Whether a staff representative actually appeared in Kyle's behalf and had access to all of the investigation materials is thus unclear on the record before us.

Apparently, petitioner Kyle argues the proceedings were arbitrary and capricious because no credibility determination was made on the statements made by an informant and that such action violated the bureau of prison's policy statement. It is not necessary that the IDC state with specificity their reasons for believing statements made by inmate informants. Such a written determination may well serve to identify the informant. Clearly, the inmate defendant is not entitled to the name of a confidential inmate informant. *Wolff v. McDonnell*, 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974). The chance of retribution and retaliation by the accused inmate or other members of the prison population warrant the non-disclosure of a confidential informant and withholding reasons for relying upon information tendered by the confidential informant. *Wolff v. McDonnell, supra; Baxter v. Palmigiano*, [425] U.S. 308 [96 S.Ct. 1551, 47 L.Ed.2d 810] (1976), *see Duffin v. Fenton*, C79–1810A (N.D.Ga. Mar. 18, 1980) (O'Kelley, J.). The consideration given the informant's confidential statement by the IDC members comported with due process requirements.

The district court's order entered summary judgment by adopting the report of the magistrate.

**B. The Requirements of Due Process**

Kyle has contended that the Atlanta IDC violated his due process rights in three ways: (1) by relying on confidential information without making a determination of the credibility and reliability of the informant, (2) by failing to set out the evidence relied upon as required by *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and (3) by making findings that were arbitrary and capricious because they were not based on substantial evidence. The appellees dispute the first and third contentions but did not directly address the second one either in their brief or at oral argument. They additionally argue that Kyle has not exhausted his administrative remedies through the procedures established by the Bureau of Prisons and that such exhaustion should not be excused here.

In considering the first due proc-· ess claim raised by Kyle, we must begin by noting that there is great tension between the peculiar needs of a prison and the due process rights of those confined there. Prisoners' rights are subject to restrictions imposed by the nature of the regime to which they have been lawfully committed, and prison disciplinary proceedings need not provide "the full panoply of rights" that would be due a defendant in a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2975. But even though a prisoner's "rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime." *Id.* at 555, 94 S.Ct. at 2974. The "mutual accommodation between institutional needs and objectives and the provisions of the constitution" thus requires a delicate balancing. *Id.* at 556, 94 S.Ct. at 2975.

The Constitution, as interpreted in *Wolff*, does not require that inmates be allowed to test through confrontation and cross-examination the credibility of those who accuse them. *See id.* at 568, 94 S.Ct. at 2980. Those rights might entail a high risk of ˙retribution and retaliation, especially where the identity of an informer would otherwise not have been disclosed to an accused. Prison officials may thus exercise their sound discretion as to the extent of cross-examination allowed in a particular situation. *Id.* at 568–69, 94 S.Ct. at 2980–81.

The magistrate's recommendation obviously interprets *Wolff* as foreclosing the possibility that other procedures besides those specifically considered there may be required to insure that a disciplinary committee's actions comport with due process. We disagree. Though *Wolff* left to prison officials the initial determination of when the balance of interests requires cross-examination, *id.* at 569, 94 S.Ct. at 2981, it did not address what other procedures might be constitutionally necessary as a check on the credibility of informants relied upon by committees making disciplinary decisions.

However, it is clear that "preventing arbitrary determinations ... is the major thrust of *Wolff*," *Gomes v. Travisono*, 510 F.2d 537, 540 (1st Cir. 1974), and even if *Wolff's* enumerated requirements were met in this case, we believe that thrust generally demands more "process" than Kyle was given by the IDC.

"[I]n entrusting to prison officials responsibility for promulgating procedures for arriving at an adequate basis for decision, *Wolff* intended a genuine, even if single, fact-finding hearing and not a charade." *Helms v. Hewitt*, 655 F.2d 487, 502 (3rd Cir. 1981). Consequently, to make a decision based on the factual evidence presented, part of a disciplinary committee's task must be to make a bona fide evaluation of the credibility and reliability of that evidence. In a prison environment, where authorities must depend heavily upon informers to report violations of regulations, an inmate can seek to harm a disliked fellow inmate by accusing that inmate of wrongdoing. Since the accuser is usually protected by a veil of confidentiality that will not be pierced through confrontation and cross-examination, an accuser may easily concoct the allegations of wrongdoing. Without a bona fide evaluation of the credibility and reliability of the evidence presented, a prison committee's hearing would thus be reduced to a sham which would improperly subject an inmate accused of wrongdoing to an arbitrary determination.

The procedures necessitated by the obvious dangers to an inmate are limited by a prison's peculiar needs. Specifically, because a prison needs informants in order to maintain a system of order, an institution must protect those who accuse their fellow inmates.

■■ Balancing these considerations, we believe that where a committee imposes a sanction as severe as the one here, and where the committee's determination is based upon hearsay information derived from an unidentified informant, minimum due process mandates that the IDC undertake in good faith to establish the informant's reliability, at least to its own satisfaction. There must be some information on the record from which a tribunal can reasonably conclude that the IDC undertook such an inquiry and, upon such inquiry, concluded that the informant was reliable.[2] The committee should describe the nature of its inquiry to the extent that the committee is satisfied that such disclosure would not identify an informant.

We do not perceive the issue as the appellees depict it: whether prison officials are constitutionally required to bring an informant before the IDC. If prison officials believe that there would be little risk involved, having an informant appear in camera before the IDC would certainly be one means of assessing reliability. Other procedures, though, would also suffice. *See generally* J. Gobert and N. Cohen, Rights of Prisoners § 8.05 (1981). For example, due process may be satisfied where the witness relaying information provided by a confidential informant testifies before the IDC that he knows the informer, that he used him in the past, and that the informer had first hand knowledge of the incident reported. *See Smith v. Rabalais*, 659 F.2d 539 (5th Cir. 1981).

The government argues that it is enough for the IDC to know that the informant has a past record of reliability. That knowledge, however, is not on the record here. Both the investigator's report and the confidential report indicated that their sources were considered reliable, but neither one explained why. Indeed, there is nothing on the record to show that the IDC made any

---

**2.** The magistrate misconceived the reach of Kyle's argument. He believed that a written statement of reasons for believing an informant might well serve to identify the source, and he rejected Kyle's claim because a prisoner clearly is not entitled to the name of a confidential informant under *Wolff*. However, as we explain above, requiring the record to show that the IDC undertook to establish reliability does not mean requiring written statements or procedures which could result in the identification of the informant.

We recognize that what we are ordering is minimal and is subject to abuse should prison officials act in bad faith by making a conclusory statement on the record without actually inquiring into reliability. Our holding intends and assumes that officials will act in good faith.

inquiry into reliability or that it was furnished with any information explaining the trustworthiness and credibility of the "reliable sources."

The inquiry by the IDC into the reliability of informers may be diminished (or even satisfied) where there is corroborating physical evidence of the information provided. Sometimes the corroborating evidence should be given little weight and would not relieve the IDC of a reliability determination. For example, a weapon might be found where an informant indicates it will be, but if the area where the weapon is found is a public place, the importance of the corroboration would be diminished since the weapon could have been planted. In other situations, though, the corroborating evidence may be so strong as to sufficiently substantiate the informer.

Here, the appellees contend that the bloody fatigue pants provided strong corroborating physical evidence. Kyle argues, though, that the statement of evidence relied upon by the IDC did not refer to the pants and that the pants cannot, therefore, be considered as evidence which would have rendered unnecessary any further assessment of reliability by the IDC. He also argues that the IDC's determination was arbitrary and capricious because the evidence that was referred to in the IDC's statement was not substantial enough to support its determination. Further, he asserts in his second due process claim that the statement of evidence was inadequate under *Wolff*.

Kyle briefly alluded to these intertwined arguments when he objected to the magistrate's recommendation in the district court proceedings. However, the district court wholly accepted the recommendation and did not expressly respond to Kyle's contentions. For that reason, and because the arguments may have been placed in a new light as a result of the due process requirements we have outlined, we hesitate to engage in any further determination of the issues presented to us. Moreover, we believe it is unwise to resolve fully the legal questions in this case since it is unclear whether Kyle has exhausted his administrative appeals. Accordingly, we remand this portion of the case for further consideration by the district court.

## II. The Lewisburg Incident

### A. The Facts

On April 22, 1976, while at the Lewisburg Penitentiary, Kyle was charged with insolence to a staff member and with encouraging others to refuse to work. He was found guilty by the IDC, which forfeited 500 days of his statutory good time. Kyle argues on appeal that the IDC impermissibly punished him for exercising his first amendment rights and thus violated due process.

The IDC's statement of findings relied upon was vague: "Facts in the report and the facts in the investigation." The "facts in the [incident] report" appear as the reporting employee's description of the incident:

At 8:15 A.M. this date when I told Kyle 34078 to stack material he replied in an insolent manner "How many times must I tell you about working on that machine." I replied that he need not tell me once as he would work where and when I told him. Reluctantly he did obey this order. Later I learned that he approached several inmates and urged that they do not work.

The facts in the investigation were:

Kyle had a very arrogant and insolent attitude. He refused to make any comment, sign any forms or cooperate in any manner.

When Kyle was being escorted from Industry to the Lts. office another black inmate asked him if he was being locked up. Kyle stated 'Yes and there are going to be many, many more locked up.[']

The IDC did little to clarify its findings when it expressed its reason for taking action as follows: "By his own admission he did make statement there was going to be many, many more locked up and this is encouraging others."

### B. The Exhaustion Requirement

Ordinarily, inmates are required to exhaust available administrative remedies prior to seeking extraordinary relief in

federal court. *Jones v. Henderson*, 495 F.2d 559 (5th Cir. 1974); *Jones v. Carlson*, 495 F.2d 209 (5th Cir. 1974). Kyle admits that he did not exhaust his administrative remedies for the Lewisburg incident, but he has contended that exhaustion was futile. He asserts that the district court must have agreed with his contention because it reached the merits of the constitutional issue he raised.

As we indicated earlier, the district court adopted the recommendation of the magistrate. It is clear from reading that recommendation that the magistrate merely assumed that available administrative relief had been exhausted. Summary judgment for the appellees was thus entered by the district court without any consideration of the exhaustion requirement.

Kyle has not demonstrated that any exceptions to the exhaustion requirement are applicable,[3] and prison officials must therefore be given the first opportunity to review the action of the IDC in Lewisburg. We vacate the judgment on this portion of the appeal and remand with instructions that the district court dismiss it without prejudice.

### III. Conclusion

We hold that due process required the IDC in Atlanta to make an independent investigation into the credibility and reliability of informants if it relied on those informants to take disciplinary action against inmate Kyle. For purposes of judicial review, the record must contain some facts from which a court can reasonably conclude that the IDC investigated and found that the informant was credible or that his information was reliable. The standard by which the district court evaluated the constitutionality of the IDC's actions in this case was incorrect because it did not require that such facts be provided. However, because of the possibility that there may have been physical evidence which was sufficiently corroborative of the informants in this case, and because there has been no determination of exhaustion of administrative remedies with respect to the Atlanta incident, it would be improper for us to further assess the constitutionality of the IDC's actions without further consideration by the district court. Consequently, we remand that portion of Kyle's appeal. The portion of Kyle's appeal dealing with the Lewisburg incident is also remanded and should be dismissed without prejudice so that administrative appeals may be pursued.

**REVERSED AND REMANDED.**

---

**3.** Kyle summarily asserts, but has not shown, the applicability of two of the four exceptions to the requirement of exhaustion identified in *Patsy v. Florida Int'l University*, 634 F.2d 900, 903 (5th Cir. 1981) (en banc) (§ 1983 action).