United States Court of Appeals,

Eleventh Circuit.

No. 93-9282.

Jeffery Jerome WILLIAMS, Plaintiff-Appellant,

v.

Ronald FOUNTAIN;  Fred Wilson;  Michael Godwin;  Aland A. Adams;
Albert G. Thomas;  Lanson Newsome, Defendants-Appellees.

March 8, 1996.

Appeal from the United States District Court for the Southern
District of Georgia. (No. CV692-065), Dudley H. Bowen, Jr., Judge.

Before KRAVITCH and HATCHETT, Circuit Judges, and HILL, Senior
Circuit Judge.

KRAVITCH, Circuit Judge:

This is a § 1983 action brought by a prisoner, claiming that
he was subjected to disciplinary sanctions in violation of his
procedural due process rights.   We hold that the prison
disciplinary proceedings complied with the minimum requirements of
due process.

I.

In August of 1991, Jeffery Jerome Williams, an inmate of the
Georgia State Prison at Reidsville, was sanctioned in prison
disciplinary proceedings for fighting with another inmate.
Williams was charged in a prison disciplinary report (filed by
prison official Ronald Fountain) with the "major infraction"[1] of
engaging in a "physical encounter causing or intending to cause
serious injury" for striking another inmate in the head with a pool

[1]This is the most severe of four categories of prohibited
acts, carrying the highest range of sanctions.  *See* Georgia State
Prison, Dept. of Inmate Rules and Discipline, Policy Statement
No. 590.1, at 27-33 (1985).

cue during an altercation in the television room. An investigation was conducted by hearings investigator Michael Godwin, who prepared a report concluding that Williams was guilty as charged. The report documents that this conclusion was based on the charging staff's statements, confidential witness statements, and Williams's own admission that he had participated in a fight with the other inmate (though Williams denied that a pool cue was involved).

A disciplinary hearing was then conducted, prosecuted by Donald Lewis and presided over by Fred Wilson. No witnesses were presented by either side,[2] and the investigating officer did not testify. The disciplinary committee, relying on the investigation report, found Williams guilty and sentenced him to twelve months of disciplinary confinement, 45 days of store restriction, and 45 days of incentive privilege restriction. Neither the investigation report nor the disciplinary committee report indicates that the reliability of the confidential witness statements had been evaluated. Williams filed an administrative appeal, which was denied in turn by the disciplinary appeals officer (Aland Adams), the prison warden (Albert Thomas), and the deputy commissioner of the Georgia Department of Corrections (Lanson Newsome).

Proceeding *pro se,* Williams filed a complaint in federal court pursuant to 42 U.S.C. § 1983, alleging that Fountain, Wilson, Godwin, Adams, Thomas, Lewis, and Newsome (collectively, "prison officials") had deprived him of due process. Williams, who is illiterate, also requested that counsel be appointed. The district

_____

[2]Williams declined to call any witnesses on his own behalf. His explanation for this omission is that none of the inmates who observed the altercation were on friendly terms with him.

court first ordered that the case be dismissed as frivolous, pursuant to 28 U.S.C. § 1915(d), but then reinstated the case upon Williams's filing of an amended complaint. After the prison officials answered the amended complaint and requested summary judgment, court-appointed counsel filed a second amended complaint and a response to the summary judgment motion. These filings argued that the prison disciplinary proceedings violated Williams's procedural due process rights because Williams was not allowed to confront or cross-examine witnesses and his conviction was not supported by a written statement articulating the evidentiary basis for the disciplinary action. The district court entered an order adopting the report and recommendation of a magistrate, granting the prison officials' motion for summary judgment. Williams, represented by new appointed counsel, now appeals.

## II.

Williams raises two procedural due process issues.[3] First, he

---

[3]Recently, in *Sandin v. Conner,* --- U.S. ----, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified the circumstances in which disciplinary changes in a prisoner's conditions of confinement will deprive him or her of a constitutionally protected liberty interest:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

--- U.S. at ----, 115 S.Ct. at 2300 (citations omitted).

The Court in *Conner* concluded that the sanctions imposed on the inmate in that case did not impinge upon a protected liberty interest. The majority noted that the

argues that his due process rights were violated by the prison officials' failure to evaluate the credibility of confidential informants who were relied upon in the investigation.  Second, discounting the confidential informant testimony, Williams argues that the prison officials violated his due process rights by failing to establish any record evidence in support of his conviction.

Although inmates subject to disciplinary actions may be denied the right to identify and cross-examine adverse witnesses when prison officials are concerned about reprisals, *Wolff v. McDonnell,* 418 U.S. 539, 566-70, 94 S.Ct. 2963, 2980-81, 41 L.Ed.2d 935 (1974), due process requires that the record of disciplinary proceedings document some good faith investigation and findings as to the credibility of confidential informants and the reliability of the information provided by them.  *Kyle v. Hanberry,* 677 F.2d 1386, 1390-91 (11th Cir.1982).[4]  The purpose of this requirement is

inmate was sentenced to only 30 days of segregated confinement, the record showed that disciplinary segregation mirrored conditions imposed on inmates segregated for other reasons, and the inmate's disciplinary record was subsequently expunged (thus preventing the offense from affecting his chances of parole).  --- U.S. at ----, 115 S.Ct. at 2300.  Even on these facts, however, four Justices would have held that the inmate was deprived of a protected liberty interest.  Because Williams's sanctions—especially the full year of solitary confinement—represent substantially more "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life," we assume that he suffered a liberty deprivation and was entitled to due process.

[4]Other circuits have agreed with *Kyle* in requiring prison disciplinary committees to conduct and document evaluations of confidential informants' credibility. *See Brown v. Smith,* 828 F.2d 1493, 1495 (10th Cir.1987); *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986);  *Helms v. Hewitt,* 655 F.2d 487, 502

not only to foster the reliability of prison investigations within the constraints of unique institutional concerns, but also to enable meaningful appellate review of prison disciplinary proceedings.

In this case, there is no indication in the prison disciplinary record that prison officials ever evaluated the credibility of the confidential informants who provided information in the course of Williams's investigation. Under *Kyle,* this omission would be a clear violation of Williams's procedural due process rights if the information provided by the confidential witness statements were relied upon in determining Williams's guilt. The government argues, however, that Williams's conviction was not based on the testimony of confidential informants, as the disciplinary committee report indicates that no confidential information was considered by the committee. The committee report also states, however, that the committee was relying on "charging staff's statements and the investigation"; the investigation report, in turn, states that the investigator's findings were based on "confidential witness statements reviewed by this investigator." By adopting the investigator's recommendation, therefore, the committee, in determining guilt, indirectly relied upon the confidential informant statements, the reliability of which had never been explicitly established.

---

(3d Cir.1981), *rev'd on other grounds,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Russell v. Coughlin,* 774 F.Supp. 189 (S.D.N.Y.1991) (noting that although the Second Circuit has not ruled on the issue, numerous district courts within that circuit have required inmate disciplinary committees to comport with the requirements of *Kyle* ).

Nevertheless, the government is correct to this extent: if the sanctions imposed by the disciplinary committee have a sufficient evidentiary basis independent of any unreliable information obtained from confidential informants, then procedural due process concerns would be allayed. *See Kyle,* 677 F.2d at 1391 ("The inquiry ... into the reliability of informers may be diminished (or even satisfied) where there is corroborating physical evidence of the information provided."); *Young v. Jones,* 37 F.3d 1457 (11th Cir.1994) (finding no due process violation where confidential informant credibility not evaluated, but sufficient corroborating evidence of the information supplied), *cert. denied,* --- U.S. ----, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995).

A minimum requirement of due process is that conclusions of prison disciplinary bodies be "supported by some evidence in the record." *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). "Ascertaining whether this standard is satisfied does not require [a reviewing court's] examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56, 105 S.Ct. at 2774.

The magistrate judge in this case found that the hearing officer's "reasons may not have been extensive, but due process was given. An appeals committee or other reviewing body, such as this Court, can determine what evidence the hearing officer relied

upon."  As far as this court can determine, the disciplinary committee relied upon, besides information provided by confidential informants, nothing other than Williams's own statement:  "There was no pool stick involved, but we did have a fight."[5]

On the unique facts of this case, however, this statement is sufficient to meet the due process standard of *Hill.*  Williams admitted before the hearing officer that he engaged in the fight during which the other inmate was injured;  he only denies that he hit the other inmate with a pool cue.  (Williams asserts that the other inmate was injured in the course of their "wrestling" or "shoving" match when he slipped on spilled coffee.[6])  The charge against Williams was "physical encounter causing or intending to cause serious physical injury."  Williams does not dispute that the other inmate suffered "serious physical injury," nor does he dispute that the "physical encounter" he engaged in was the "cause" of the injury, in the ordinary sense of causation.  An adequate factual basis for Williams's punishment was therefore established when Williams confessed to participating in the fight.  Although the disciplinary committee may not have chosen to impose such a

_____

[5]The disciplinary committee report states only that the finding of guilt is based on "charging staff's statements and the investigation."  The investigation report offers "investigation/confidential witness statements reviewed by this investigator," the (tautological) fact that the "investigation was observed by the investigator," and the charging officer's statement in support of its conclusion that Williams is guilty as charged.  It is undisputed that no prison officers witnessed the altercation at issue.  This leaves Williams's statement, recorded in the committee report, as the only basis (aside from confidential informant statements) for the disciplinary action.

[6]Williams made this statement in an affidavit dated June 18, 1993, attached to his memorandum of law in opposition to the prison officials' request for summary judgment.

severe sanction had the facts alleged by Williams been established, it would have been within its authority to do so.[7]  Thus, although the prison officials in this case tread precariously close to the due process line, we cannot conclude that there is no evidence in the record to support the disciplinary sanctions imposed on Williams.

The district court's grant of summary judgment in favor of the prison officials is therefore AFFIRMED.

---

[7]Disciplinary segregation of up to 24 months is warranted for all offenses involving physical violence, with the exception of "striking another person," which can only be punished with up to six months of segregated confinement.  *See* Georgia State Prison, Dept. of Inmate Rules and Discipline, Policy Statement No. 590.1, at 27-33 (1985).