IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2001

TONY WILLIS, ET AL. v. TENNESSEE DEPARTMENT OF
CORRECTION, ET AL.

Appeal from the Chancery Court for Davidson County
No. 99-3332-III     Ellen Hobbs Lyle, Chancellor

No. M2000-01397-COA-R3-CV - Filed June 5, 2002

WILLIAM C. KOCH, JR., J., dissenting.

The court has constructed its decision in this case using *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995) as its foundation. I do not believe that *Sandin v. Conner* can carry the weight the court has placed on it. Accordingly, I dissent, not because the prisoner is entitled to judicial relief, but simply because his petition states a claim upon which the sort of relief available through a common-law writ of certiorari could be granted.

**I.**

In mid-1999, Tony Willis and Edward Tharpe were cellmates at the Turney Center in Hickman County. They were charged with attempted escape, a Class A disciplinary offense,[1] after a pair of pliers was discovered taped to the bottom of a fan in their cell. The pliers had apparently been stolen from a maintenance worker. At separate disciplinary hearings conducted in August 1999, both Messrs. Willis and Tharpe were found guilty of attempted escape based on the pliers and other information provided by a confidential informant. The Class A Disciplinary Board punished them with punitive segregation, involuntary administrative segregation, and a five dollar fine. The warden and the Commissioner of Correction later upheld the disciplinary board's decisions.

On November 18, 1999, Messrs. Willis and Tharpe filed a pro se petition for common-law writ of certiorari in the Chancery Court for Davidson County seeking judicial review and reversal of their convictions for attempted escape. Their petition alleged, at least as I understand it, that they were denied a fair hearing in violation of their due process rights and that the disciplinary board had acted arbitrarily and illegally by failing to follow the Department of Correction's Uniform

---

[1]Uniform Disciplinary Procedures, TDOC Policy No. 502.05(VI)(A)(5) (Dec. 30, 1996) ("TDOC Policy").

Disciplinary Procedures. Specifically, Messrs. Willis and Tharpe asserted (1) that they were not provided adequate notice of the charges against them and that they "were never told when, where, what, why or how they were attempting to escape," (2) that they were prevented from discovering and presenting relevant, "exculpatory" evidence and witnesses, (3) that they were convicted using evidence from a confidential informant that was mishandled by the disciplinary board, and (4) that their punishment was excessive.

Approximately seven weeks after Messrs. Willis and Tharpe filed their petition, the Office of the Attorney General, on behalf of the Department, filed its customary motion for an extension of time to respond. Even though the trial court granted an extension to February 22, 2000, the Attorney General was unable to file his customary conclusory motion to dismiss[2] until February 24, 2000. Because the motion was not accompanied by a memorandum of law, the Attorney General filed an identical motion to dismiss and a memorandum of law on February 25, 2000.

The Attorney General's memorandum of law in support of the motion to dismiss is, for some reason, part of the appellate record.[3] From it, we learn that the Attorney General's motion was predicated on two grounds. First, the Attorney General asserted that the trial court lacked subject matter jurisdiction over the petition because Messrs. Willis and Tharpe could not use a statutory writ of certiorari to seek judicial review of the disciplinary board's decision.[4] Second, the Attorney General insisted that the trial court should dismiss the petition "because the disciplinary board neither acted unlawfully nor exceeded its jurisdiction." While one would have thought that the latter assertion would require at least a cursory review of the record of the disciplinary proceedings, the

---

[2]The motion simply asserted that the petition should be dismissed "[p]ursuant to Tenn. R. Civ. P. 12.02(1) and (6)." This motion, like most of the motions filed by the Civil Rights and Claims Division in cases of this sort, fails to comply with the rudimentary requirements of motion practice under the Tennessee Rules of Civil Procedure. In terms that even first-year law students can understand, Tenn. R. Civ. P. 7.02(1) requires that motions must "state with particularity the grounds therefor." For the purposes of a Tenn. R. Civ. P. 12.02(6) motion, this means that the moving party must state in its motion why the plaintiff has failed to state a claim for which relief can be granted. We have repeatedly reminded the Attorney General that including the grounds for a Tenn. R. Civ. P. 12.02(6) motion in a separate memorandum of law does not comply with Tenn. R. Civ. P. 7.02(1). *See, e.g., Hickman v. Tennessee Bd. of Paroles*, No. M2000-02846-COA-R3-CV, 2001 WL 1222259, at *1, n.2 (Tenn. Ct. App. Oct. 16, 2001) (Tenn. R. App. P. 11 application pending); *Pendleton v. Mills*, ___ S.W.3d ___, ___, 2000 WL 1089503, at *2, n.7 (Tenn. Ct. App. 2001); *Robinson v. Clement*, 65 S.W.3d 632, 635 n.2 (Tenn. Ct. App. 2001).

[3]It is not altogether clear why the Clerk and Master included this memorandum of law in the appellate record in light of Tenn. R. App. P. 24(a)'s clear admonition that trial briefs and counsel's memoranda of law are not part of the record on appeal. *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 549 (Tenn. Ct. App. 1991); *Aclin v. Speight*, 611 S.W.2d 54, 56 (Tenn. Ct. App. 1981).

[4]We have repeatedly held that this standard subject-matter jurisdiction argument is without merit because Tenn. Code Ann. §§ 27-8-104(a), 27-9-102 (2000) clearly give the Chancery Court for Davidson County subject matter jurisdiction over petitions of this sort. The argument is even more tenuous in this case because there is absolutely no basis for construing the petition as one seeking a statutory writ of certiorari. The petition's reference to Tenn. Code Ann. § 27-9-101, et seq. does not transform the petition into a petition for statutory writ of certiorari because the procedures in Tenn. Code Ann. §§ 27-9-101, -114 apply equally to common-law and statutory writs of certiorari. *Fentress County Beer Bd. v. Cravens*, 209 Tenn. 679, 685-86, 356 S.W.2d 260, 263 (1962).

Attorney General did not file the record of the disciplinary hearing even though it was readily available. The Attorney General must have decided that the record would be superfluous in light of his argument that the petition failed to state a claim upon which relief could be granted because the "[p]etitioners in this case were not entitled to due process since the imposed sanctions of punitive segregation, involuntary administrative segregation, and a fine of $5.00 were not atypical in relation to the ordinary incidents of prison life."[5]

In its May 5, 2000 memorandum and order, the trial court, citing *Sandin v. Conner*, determined that Messrs. Willis and Tharpe had failed to state a claim meriting the sort of relief available through a common-law writ of certiorari because the punishments they received "are not atypical in relation to the ordinary incidents of prison life." The court also concluded based on the "undisputed facts of record"[6] that "the process provided to the petitioners to contest and defend against disciplinary sanctions was commensurate with the sanctions imposed on them and, therefore, there was no violation or deprivation of due process." Mr. Tharpe has appealed.[7]

## II.

The court has determined that Mr. Tharpe's petition failed to state a claim upon which relief can be granted solely because the punishment he received was not harsh enough to amount to the imposition of "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."[8] The court's reliance on *Sandin v. Conner* is flawed in two fundamental ways. First, *Sandin v. Conner* does not apply to certiorari proceedings in state court. Second, relief under a common-law writ of certiorari addresses not just violations of constitutional rights, but also arbitrary and capricious decisions.

## A.

The United States Supreme Court did not intend to establish some sort of universal rule governing all federal and state judicial proceedings involving the discipline of prisoners when it decided *Sandin v. Conner*. Rather, the Court was simply articulating a test for determining whether prisoners seeking relief under 42 U.S.C. § 1983 (1994) had alleged a violation of a liberty interest

---

[5]The legal basis for this assertion is *Sandin v. Conner* and this court's expansive interpretation of *Sandin v. Conner*.

[6]Of course there are no facts in the record other than the allegations in the petition which must be taken as true. *Royal Clothing Co. v. Holloway*, 208 Tenn. 572, 574, 347 S.W.2d 491, 492 (1961) (holding that in the absence of a record, the factual statements in a petition for common-law writ of certiorari must be taken as true); *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000) (holding that Tenn. R. Civ. P. 12.02(6) motions require the courts to presume that a complaint's factual allegations are true).

[7]While both Mr. Willis and Mr. Tharpe filed a notice of appeal, only Mr. Tharpe has filed a brief with this court. Accordingly, Mr. Willis's appeal should be dismissed in accordance with Tenn. R. App. P. 29(c).

[8]*Sandin v. Conner*, 515 U.S. at 484, 115 S. Ct. at 2300.

that would entitle them to relief. The holding of *Sandin v. Conner* is that a prisoner who files a 42 U.S.C. § 1983 suit challenging a prison disciplinary proceeding based on a failure to follow a state statute, rule, or policy states a claim for relief only if the punishment the prisoner received imposes a significant hardship that is atypical of the normal incidents of prison life. Thus, *Sandin v. Conner* is only directly applicable to actions in state and federal court under 42 U.S.C. § 1983.[9]

Petitions for a common-law writ of certiorari serve different purposes and provide different relief than actions under 42 U.S.C. § 1983. A common-law writ of certiorari permits the courts to examine a lower tribunal's decision to determine whether the tribunal exceeded its jurisdiction or acted illegally. *Robinson v. Clement*, 65 S.W.3d at 635; *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999). For the purpose of a common-law writ of certiorari, illegal actions include decisions that are arbitrary and capricious. *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987); *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983); *421 Corp. v. Metropolitan Gov't*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). What could be more arbitrary and capricious than a rule-maker refusing to abide by its own rules?

## B.

A common-law writ of certiorari provides judicial relief in more circumstances than an action under 42 U.S.C. § 1983. Section 1983 provides a federal cause of action for the violation of rights secured by the United States Constitution or federal law. *Pendleton v. Mills*, ___ S.W.3d at ___, 2001 WL 1089503, at *5; *Parks Properties v. Maury County*, 70 S.W.3d 735, 743 (Tenn. Ct. App. 2001). On the other hand, a common-law writ of certiorari provides a judicial remedy whenever a lower tribunal exercising judicial functions has exceeded its jurisdiction or has otherwise acted illegally. Tenn. Code Ann. § 27-8-101 (2000); *Robinson v. Clement*, 65 S.W.3d at 635; *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d at 80. Thus, a common-law writ of certiorari may be used to grant relief in circumstances that do not warrant relief under 42 U.S.C. § 1983. *Franklin v. Tennessee Dep't of Corr.*, No. M2001-00279-COA-R3-CV, 2001 WL 1386089, at *4 (Tenn. Ct. App. Nov. 8, 2001 (No Tenn. R. App. P. 11 application filed).

One of the ways in which a lower tribunal acts illegally is when it follows an unlawful procedure. *Watts v. Civil Serv. Bd.*, 606 S.W.2d 274, 277 (Tenn. 1980); *Nevills v. South Cent. Corr. Disciplinary Bd.*, No. M2000-02324-COA-R3-CV, 2001 WL 1117066, at *3 (Tenn. Ct. App. Sept. 25, 2001) (No Tenn. R. App. P. 11 application filed); *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758-59 (Tenn. Ct. App. 2000). The Tennessee Supreme Court has specifically approved using a common-law writ of certiorari to remedy (1) fundamentally illegal rulings, (2) proceedings inconsistent with essential legal requirements, (3) proceedings that effectively deny a party his or her day in court, (4) decisions beyond the lower tribunal's authority, and (5) plain and palpable abuses of discretion. *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980). Accordingly, a

---

[9] Actions under 42 U.S.C. § 1983 may be filed in state court. *Wimley v. Rudolph*, 931 S.W.2d 513, 515 (Tenn. 1996); *Poling v. Goins*, 713 S.W.2d 305, 306 (Tenn. 1986).

common-law writ of certiorari can be used to address the denial of procedural rights secured by the federal and state constitutions,[10] state statute,[11] or state, federal, or local regulations.[12]

This court has been more diffident about whether violations of the Department's Uniform Disciplinary Procedures warrant relief under a common-law writ of certiorari. Initially, we concluded that departures from these procedures could be "so extreme as would compel the trial court to issue a writ of certiorari." *Wilson v. South Cent. Corr. Facility Disciplinary Bd.*, No. M2000-00303-COA-RM-CV, 2000 WL 1425228, at *5 (Tenn. Ct. App. Sept. 28, 2000) (No Tenn. R. App. P. 11 application filed). More recently, we held that a failure to adhere to the requirements of the Uniform Disciplinary Procedures would not amount to a failure to "follow the essential requirements of the law" unless the punishment imposed an atypical and significant hardship beyond the ordinary incidents of prison life. *Ahkeen v. Campbell*, No. M2000-02411-COA-R3-CV, 2001 WL 1346250, at *7 (Tenn. Ct. App. Nov. 2, 2001) (No Tenn. R. App. P. 11 application filed).[13]

The Department's Uniform Disciplinary Procedures have not and need not be promulgated as rules using the rule-making procedures in the Uniform Administrative Procedures Act. *Mandela v. Campbell*, 978 S.W.2d 531, 534 (Tenn. 1998). However, the policies exist "[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates." TDOC Policy No. 502.01(II). The policy is the sole source of the Department's disciplinary procedures. While it "is not intended to create any additional due process guarantees for inmates beyond those which are constitutionally required," deviations from the policy will warrant dismissal of the disciplinary offense if the prisoner demonstrates "some prejudice as a result and the error would have affected the disposition of the case." TDOC Policy No. 502.01(V).

Accordingly, I would hold that a prisoner seeking judicial review of a prison disciplinary proceeding states a claim meriting relief under a common-law writ of certiorari if the prisoner's complaint alleges facts demonstrating that the failure to follow the Uniform Disciplinary Procedures affected the disposition of the disciplinary proceeding to the prisoner's prejudice. Stated in terms more traditionally associated with a common-law writ of certiorari, a prisoner states a claim warranting the issuance of a writ of certiorari to review the record of a disciplinary proceeding if his

---

[10] *State v. Womack*, 591 S.W.2d 437, 442 (Tenn. Ct. App. 1979).

[11] *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d 900, 905 (Tenn. Ct. App. 1996); *Brooks v. Fisher*, 705 S.W.2d 135, 136 (Tenn. Ct. App. 1985); *Harless v. City of Kingsport*, No. 03A01-9707-CH-00289, 1998 WL 131519, at *5 (Tenn. Ct. App. Mar. 25, 1998) (No Tenn. R. App. P. 11 application filed).

[12] *See Fox v. Tennessee Bd. of Paroles*, No. 01A01-9506-CH-00263, 1995 WL 681135, at *3 (Tenn. Ct. App. Nov. 17, 1995) (No Tenn. R. App. P. 11 application filed) (holding that an allegation of failure to provide a right or benefit to which the claimant is entitled under state law or regulation states a claim for relief through a common-law writ of certiorari).

[13] The court conditioned this conclusion by observing that "[w]e do not imply that a statutory violation cannot constitute a failure to conform to the essential requirements of the law." While this statement is undoubtedly correct, it does not imply that the government's obligation to follow its own procedures depends on whether these procedures are mandated by statute, rule, regulation, or policy.

or her petition contains factual allegations demonstrating that the prisoner was prejudiced (1) by being effectively denied a hearing, (2) by plain and palpable abuse of the hearing officer's, the chairperson's, or the disciplinary board's discretion, or (3) by hearing officers, chairpersons, or boards following an unlawful procedure.

## C.

It is not our prerogative at this stage of the proceedings to analyze the substantive merits of Mr. Tharpe's claims because the Department elected to file a Tenn. R. Civ. P. 12.02(6) motion rather than the record of the disciplinary hearing.[14] Our only task is to review Mr. Tharpe's petition, taking its factual allegations as true, to determine whether it states a claim or claims upon which the relief available through a common-law writ of certiorari can be granted.

Mr. Tharpe's petition contains factual allegations depicting three departures from the Department's Uniform Disciplinary Rules. First, it alleges that Messrs. Tharpe and Willis did not receive adequate notice of the disciplinary charges. Second, it asserts that Messrs. Tharpe and Willis were prevented from obtaining and presenting relevant evidence. Finally, it alleges that the disciplinary board did not independently assess and verify the reliability of the confidential informant's evidence. If substantiated, these deviations from the Uniform Disciplinary Procedures, considered individually or collectively, could have affected the outcome of the disciplinary proceeding to the prisoners' prejudice.

The petition states that Messrs. Tharpe and Willis "were not placed on notice prior to their hearings of the specific charges against which they would have to defend." If substantiated, the failure to provide notice would be a violation of the notice requirements in the Uniform Disciplinary Procedures[15] which could very easily have prejudiced the prisoners' ability to defend themselves.[16] In the absence of a record, we must take the allegations in the petition as true and must construe the

---

[14]We have already questioned the wisdom of the tactic of filing a motion to dismiss or summary judgment without filing the complete record in cases of this sort. *Livingston v. State*, No. M1999-01138-COA-R3-CV, 2001 WL 747643, at *5 (Tenn. Ct. App. July 5, 2001) (No Tenn. R. App. P. 11 application filed) (stating that the court is "troubled" by the tactic of seeking a summary judgment supported only by carefully selected portions of the record). I have little doubt that had the Department filed the complete record of the disciplinary hearing in this case, the information in the record would have provided a sufficient factual basis for declining to grant Mr. Tharpe relief.

[15]Prisoners are entitled to notice of their disciplinary infraction by receiving written notice of the charges (usually in the form of a copy of the disciplinary report) at least twenty-four hours before the hearing before the disciplinary board. TDOC Policy No. 502.01(VI)(A)(3)(c), -(VI)(D)(3)(b).

[16]This allegation can reasonably be interpreted to mean either that Messrs. Tharpe and Willis received no notice of the charges against them or that the notice they received was somehow defective. The former circumstance would be patently prejudicial, while the prejudicial nature of the latter circumstance would depend on the particular shortcoming of the challenged notice.

petition as alleging that the prisoners received no notice of the charges prior to the hearing.[17] If substantiated, a failure to give notice of the charges would have been a clear violation of the Uniform Disciplinary Rules that would have prejudiced the prisoners.

The petition also alleges that the disciplinary board prevented Messrs. Tharpe and Willis from obtaining and introducing relevant "exculpatory" evidence. If substantiated, this conduct would likewise be contrary to the prisoners' qualified right to introduce evidence and call witnesses in disciplinary proceedings.[18] In the absence of a record, we must presume that Messrs. Tharpe and Willis made timely requests for the witnesses and documents and that permitting them to call their witnesses would not have jeopardized safety or order in the institution. The evidence they desired to present involved the chain of custody of the pliers found in their cell. This evidence was certainly relevant and could have affected the outcome of the proceeding. Accordingly, at least on its face, we must presume that refusing to permit Messrs. Tharpe and Willis to present this evidence was prejudicial.

Finally, Messrs. Tharpe and Willis assert that the disciplinary board did not independently assess the credibility of a confidential informant whose testimony apparently formed part of the basis for finding them guilty of attempted escape.[19] This allegation, if substantiated, would be a serious departure from the Uniform Disciplinary Procedures which require the chairperson to independently "assess and verify the reliability of the informant's testimony" and, when the information provides a basis for the board's decision, "to document the factual basis for the disciplinary hearing officer's/chairperson's finding that the informant's information was reliable." TDOC Policy No. 502.01(VI)(E)(2)(e). Compliance with this procedure fosters the reliability of prison disciplinary proceedings because prisoners can be denied the opportunity to confront and cross-examine their accusers when prison officials are concerned about reprisals or other security concerns. *Williams v. Fountain*, 77 F.3d 372, 374-75 (11th Cir. 1996). In the absence of a record, we must presume that the allegations in the petition are true. Failing to independently verify the credibility of the confidential informant could easily have prejudiced both Mr. Tharpe and Mr. Willis because it could

---

[17]Mr. Tharpe states in his pro se brief that he "was issued disciplinary infraction report no. TC107423/378998 for the alleged offense of 'Attempted Escape,'" and attached a copy of this report to his brief. This document is not part of the appellate record because it was not introduced in the trial court. We cannot take judicial notice of materials appended to briefs that are not properly part of the record on appeal. *Vanderbilt Univ. v. Henderson*, No. M1998-00929-COA-R3-CV, 2001 WL 1216980, at *5, n. 4 (Tenn. Ct. App. Oct. 12, 2001) (No Tenn. R. App. P. 11 application filed); *State v. Cooper*, 736 S.W.2d 125, 131 (Tenn. Crim. App. 1987).

[18]Prisoners do not have an unqualified right to call witnesses in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 566-67, 94 S. Ct. 2963, 2980 (1974). Accordingly, TDOC Policy No. 502.01(VI)(E)(2 (c) (6) permits prisoners "to present testimony of relevant witnesses unless allowing a witness to appear would pose a threat to the institutional safety or order." Prisoners must complete witness request forms in a timely manner, TDOC Policy No. 502.01(VI(E)(2)(d)(1), but the chairperson of the disciplinary board may also use his or her discretion to allow other prisoners or staff members to testify even in the absence of a timely request. TDOC Policy No. 502.01(VI)(E)(2)(d)(2).

[19]They assert that this informant was another prisoner who "concocted" the escape story to induce the prison officials to drop drug possession charges that were pending against him.

have caused them to be convicted of a serious disciplinary offense based on false or unreliable evidence.

## III.

The imposition of punishment without a reliable determination of guilt is senseless, even when the proceeding involves a prisoner in a state correctional institution. Measuring the fairness of a prison disciplinary proceeding only by its outcome effectively puts the cart before the horse and gives the Department carte blanche to ignore its own rules as long as the punishment meted out is not too harsh. Undermining the truth-finding function of a prison disciplinary hearing by ignoring the very policies designed to assure that the proceedings will be " fair and impartial" is precisely the sort of arbitrary and capricious conduct that can be corrected using a common-law writ of certiorari. Accordingly, I would find that the petition Mr. Tharpe filed in this case states a claim for which relief can be granted, and I would remand the case to the trial court with directions to issue the writ of certiorari, direct the Department to file the record, and then address the substance of Mr. Tharpe's claims in light of the record of the proceedings.

_____
WILLIAM C. KOCH, JR., JUDGE