[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 24, 2010
JOHN LEY
CLERK

_____

No. 09-14939
Non-Argument Calendar

_____

D. C. Docket No. 06-00351-CV-3-RV-EMT

O'DELL HALL, JR.,

Plaintiff-Appellant,

versus

SANTA ROSA CORRECTIONAL INSTITUTION,

Defendant,

LT. LEAVINS,
J. B. JOHNSON,
W. R. SUTTON,
W. L. GIELOW,
D. T. SANFORD,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 24, 2010)

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

O'Dell Hall, Jr., a Florida prisoner, appeals pro se the order granting summary judgment to Officer W.R. Sutton, Officer J.B. Johnson, Lt. Leavins, Captain W.L. Gielow, and Officer D.T. Sanford, all of whom were, at relevant times, personnel at the Santa Rosa Correctional Institution ("SRCI"). Hall argues that: (1) unconstitutional errors occurred throughout his criminal proceedings; (2) Sutton, Johnson, and Leavins subjected him to unconstitutionally excessive force; and (3) his due process rights were violated during the hearings, conducted by Gielow and Sanford, on the prison disciplinary charges of unarmed assault and disobeying orders. After thorough review, we affirm.

We review de novo a district court's grant of summary judgment. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (quoting Fed.R.Civ.P. 56(c)). When making this determination, we view all facts in the light most favorable to Hall, the non-moving party. Id.

2

First, we reject Hall's claim that numerous unconstitutional errors occurred throughout his criminal proceedings, prior to his imprisonment. A prisoner may not collaterally challenge the constitutionality of his criminal conviction in a civil suit for damages under § 1983. McClish v. Nugent, 483 F.3d 1231, 1250 (11th Cir. 2007) (citing Heck, 512 U.S. at 484-87). In Heck, the Supreme Court held that,

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87.

Accordingly, because a claim for damages based on a conviction or sentence that has not been invalidated is not cognizable under § 1983, Hall's challenges to various aspects of his criminal proceedings and his sentence are not properly before us. See id.

Next, we find no merit in Hall's claim that Officers Sutton, Johnson, and Leavins subjected him to excessive force on January 24, 2006, while he was in full restraints, and forced him to carry his property to his dormitory after he had informed the medical personnel that he had a no-lifting pass. A party who asserts a claim for relief under 42 U.S.C. § 1983 must prove that (1) the plaintiff was deprived of a right

3

secured by the Constitution or laws of the United States, and (2) the person who deprived him of that right acted under color of state law. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment's bar against cruel and unusual punishment governs prison officials' use of force against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). In determining whether the amount of force used against an inmate was de minimis, a court may consider the extent of the injuries suffered by the inmate. Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002). The Supreme Court recently has clarified, however, that the core judicial inquiry is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (quoting Hudson, 503 U.S. at 7). The Court explained that injury and force are "only

4

imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Id. at 1778-79.

The five factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm" include: (1) the extent of the injury, (2) the need for application of force, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, (4) the relationship between the need and the amount of force used, and (5) any efforts made to temper the severity of a forceful response. Campbell, 169 F.3d at 1375 (citing Whitley, 475 U.S. at 321; Hudson, 503 U.S. at 7).

Applying the Campbell factors, we held in Skrtich that the officers' use of an electronic shield to shock and incapacitate the prisoner, after the prisoner refused to be handcuffed during a search of his cell, and the officers' subsequent punching, kicking, and beating the prisoner to such an extent that he had to be airlifted from the prison to a hospital where he remained for nine days, constituted an Eighth Amendment violation. Skrtich, 280 F.3d at 1299-1300.  Conceding that some degree of force was lawful in light of the prisoner's non-compliance with the officers' order to submit to handcuffing, the prisoner challenged as excessive the assault that

5

occurred after he had been incapacitated by the shock of the electronic shield. Id. at 1301-02. We held that, although the officer may have been justified in taking extra precautions in performing the cell extraction because of the prisoner's status as a "disciplinary problem," the officers acted maliciously and sadistically when they beat the prisoner after he had been shocked with the shield. Id. at 1302. Similarly, in Bozeman v. Orum, 422 F.3d 1265, 1271-72 (11th Cir. 2005), we held that the correctional officers acted maliciously and sadistically because, once the officers had subdued the prisoner, they held him face-down, stated, "Oh, we don't think you've had enough," and forced his head into a mattress until he was unconscious. Id. Further, even though the prisoner was clearly unconscious, the officers waited 14 minutes to call for medical assistance. Id. at 1273.

Viewing the facts in the light most favorable to Hall, there is no genuine issue of material fact that Sutton and Johnson did not "maliciously and sadistically" use force for the very purpose of causing harm. As the record shows, Hall received only five minutes of medical care for his injuries; has not alleged that he has suffered any long-term, prolonged injury; was subjected to the alleged force, during which his hand was forced behind his back and handcuffed, after he had broken his hand restraints, became combative, and refused to submit to hand restraints upon Sutton's orders, giving the officers a legitimate need to use force; was not repeatedly subjected

6

to harm nor rendered unconscious; and received prompt medical attention for his alleged injuries. Because Sutton and Johnson did not use unconstitutional excessive force, no constitutional violation occurred. Moreover, to the extent that Leavins was present during the alleged use of force and failed to intervene, no constitutional violation by Leavins occurred since Sutton and Johnson did not use excessive force. The district court, therefore, did not err in granting summary judgment to Sutton, Johnson, and Leavins.

Finally, we are unpersuaded by Hall's claim that his due process rights were violated during the hearings on the prison disciplinary charges of unarmed assault and disobeying orders, in that he was not allowed to present witnesses at the hearings and his request that a use-of-force videotape be played was improperly denied. The Fourteenth Amendment prohibits any state from depriving a person of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, sec. 1. A disciplinary proceeding, whose outcome will "impose[] atypical and significant hardship on the inmate" must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense.

Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 2003) (quotation omitted); see Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974).

"A minimum requirement of due process is that conclusions of prison disciplinary bodies be supported by some evidence in the record." Williams v. Fountain, 77 F.3d 372, 375 (11th Cir. 1996) (quotation omitted). "Ascertaining whether this standard is satisfied does not require a reviewing court's examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quotation and brackets omitted). The Supreme Court has identified "institutional security" and the preservation of "internal order" as legitimate correctional goals that must be balanced against the due process rights of inmates. See Bell v. Wolfish, 441 U.S. 520, 546 (1979).

As the record shows, the decision not to allow Hall to call inmate witnesses was not unconstitutional, since Hall does not argue that he had shown sufficient cause to overcome the noted concerns of disruption that would justify calling live testimony of inmate witnesses or justify postponing the disciplinary hearing to obtain statements from inmates that he did not earlier request. Nor was the denial of his request to present the use-of-force video unconstitutional, as a post-hearing investigation of the

incident showed that there was no video of the actual incident because videotaping did not begin until after the force was used. Finally, Sutton's statement that Hall became combative after he fell on the ground and attempted to strike him with his elbow, constitutes sufficient evidence to support the disciplinary decision. See Williams, 77 F.3d at 375. In sum, the evidence presented by Gielow and Sanford negated Hall's contention that his due process rights were denied during the disciplinary proceedings, and Hall failed to respond to Gielow's and Sanford's submissions with evidence creating a genuine issue of material fact. Therefore, the district court properly granted summary judgment to Gielow and Sanford on Hall's due process claims.

**AFFIRMED.**