[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13355

Non-Argument Calendar

_____

MITCHELL MARBURY,

Plaintiff-Appellant,

*versus*

CYNTHIA STEWART,
WARDEN, ST. CLAIR CF,
J. BULLARD,
Correctional Officer,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-01103-JB-B

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Mitchell Marbury, an inmate proceeding *pro se* in this 42 U.S.C. § 1983 case, appeals the district court's judgments in favor of Cynthia Stewart, William Streeter, and Jermaine Bullard (the "Defendants"). He argues that the district court abused its discretion in denying him the opportunity to dismiss court-appointed counsel for failing to seek a continuance on the last day of trial, that the district court erred in denying his discovery motions, and that he was denied material evidence in violation of the Due Process Clause. He also asks us to reverse a jury verdict in favor of one defendant. For the following reasons, we affirm.

**I.**

In response to gang violence at Holman Correctional Facility ("Holman"), then-correctional warden Cynthia Stewart asked an Alabama Department of Corrections Emergency Response Team ("CERT team") to perform a shakedown of different housing units on December 3, 2018, and to confiscate any contraband. Marbury, incarcerated at Holman, claimed that William Streeter, a CERT team commander, struck him in the face during the shakedown. Marbury said that this resulted in injuries to his face and

nose and required multiple trips to the infirmary. He also alleged that Jermaine Bullard, a CERT team member, was aware of Streeter's actions but failed to do anything to stop him. And he alleged that he informed Stewart about the incident and submitted complaints to her, but that she refused to investigate or take action to protect him.

Based on this alleged string of events, Marbury filed a complaint under § 1983 against the Defendants. He claimed that the Defendants used excessive force against him, failed to protect him, and exhibited a deliberate indifference to his constitutional right to be free from excessive force, all in violation of the Eighth Amendment. He sued the Defendants in both their individual and official capacities[1] and sought both monetary damages, and declaratory and injunctive relief.[2]

The Defendants filed an answer and a "special report" denying Marbury's claims. While not disputing that Marbury was injured at some point in December 2018,[3] the Defendants stated that

---

[1] Marbury, in one part of his complaint, alleged that he was suing only Streeter in his official capacity, but he later indicated that he was suing all three Defendants in their official capacities.

[2] In the magistrate judge's report and recommendation, the magistrate judge concluded that Marbury's requests for declaratory and injunctive relief are moot because he has since been transferred to a new facility. The district court adopted this conclusion.

[3] Medical records from Holman documented that Marbury went to the infirmary two days after the CERT team sweep, on December 5, 2018, but

Marbury's injuries were not a result of any anything they had done or failed to do.  In an affidavit, Streeter stated that he never attacked Marbury, nor did he use abusive or excessive force against him. Bullard stated in his affidavit that he did not abuse any inmate, nor did he witness any CERT team member abuse Marbury.  And Stewart stated in her affidavit that Marbury's files did not document any incident involving Marbury, or a trip to the infirmary, on December 3, 2018.  She also said that she did not recall Marbury submitting a complaint to her.

The magistrate judge assigned to the case converted the special report into a motion for summary judgment.  Marbury filed a response, submitted supporting documents, including a sworn affidavit, dated over two years after the alleged incident, from another inmate who said that he witnessed Streeter hit Marbury, and filed a motion for discovery seeking the production of certain documents.  The magistrate judge granted this motion with respect to Marbury's medical file from December 3, 2018, to December 16, 2019, any written complaints the Defendants received from Marbury related to the alleged incident, any investigative files, incident reports, use of force documents, or disciplinary records related to Marbury and the CERT team search, and the relevant administrative regulations.  The Defendants provided Marbury's medical file and the regulations in response but stated that they found no other responsive documents.

---

Marbury maintained at trial that he went on December 3.  An x-ray performed on December 12, 2018, revealed that Marbury's nose had a mild fracture.

The magistrate judge, in her report and recommendation, recommended granting the motion as to Marbury's official capacity claims against the Defendants on Eleventh Amendment grounds, but recommended denying the motion as to the individual capacity claims.[4]  The district court adopted the report and recommendation.

The district court later appointed counsel to represent Marbury.  Despite this, Marbury himself filed multiple requests for a subpoena seeking, among other things, video evidence related to his claims, and he requested funds to hire a video expert technician to assist in his case.  The magistrate judge struck these motions on the basis that Marbury's counsel needed to file them.  Counsel did file a request for, among other things: any video footage of the area at the time of the alleged incident; Marbury's medical records; any complaints or grievances Marbury submitted to the Defendants related to the CERT team shakedown on December 3, 2018, and injuries he allegedly sustained; and reports or other records related to how Marbury suffered his injuries and the CERT team shakedown.  Notably, the Defendants maintained that they were not aware of any surveillance video documenting the events[5] and

---

[4] The magistrate judge construed Marbury's complaint as raising an excessive force claim against Streeter, an excessive force claim against Stewart based on supervisor liability, and a failure to protect claim against Bullard.  And these were the claims listed in the joint pretrial report.

[5] In their amended responses to Marbury's discovery requests, the Defendants "admit[ted] that at the time of the incident, security cameras may have captured these events, but the video has since been recorded over."  However,

argued that they had otherwise already produced the relevant documents in their possession.

Counsel subsequently filed a motion to compel. The magistrate judge granted in part and denied in part this motion, directing the Defendants to produce, among other things, documents that discuss or explain how Marbury sustained the injuries documented by medical records from December 2018 and all documents Stewart wrote regarding the CERT team search on December 3, 2018.[6] Counsel also received permission to take the deposition of another inmate, Anders Washington, who was a possible witness to what allegedly happened, and subsequently added him to the pretrial witness list.

The case then proceeded to trial. Marbury testified to his version of events, and Washington testified that he witnessed

---

Streeter later testified that while cameras were later installed, there were no cameras inside the dorms at Holman on December 3, 2018.

[6] The magistrate judge also said that Marbury could subpoena the Alabama Department of Corrections ("ADOC") for certain pieces of evidence, including any video recordings of the CERT team shakedown on December 3, 2018. Marbury issued a subpoena duces tecum to ADOC for, among other things, all video from Holman and body cams of CERT team members from December 3, 2018, Marbury's entire inmate file, and reports and documents related to the source of Marbury's injuries. In response, ADOC stated that there was no surveillance or body cam footage from December 3, 2018, and that there was no investigation reports related to Marbury from December 2018, but agreed to provide, among other things, his entire inmate file and other medical records as long as they existed and Marbury paid the fees required by regulation.

Streeter assault Marbury.  After Marbury rested, the district court granted a motion for a judgment as a matter of law in favor of Stewart and Bullard.  The defense presented the testimony of a nurse that treated Marbury, who testified based on her records that Marbury came to see her on December 5, 2018, and said he was hit in the head.  However, according to her records, Marbury first mentioned an altercation with a correctional officer during a December 11 visit and subsequently, on January 4, 2019, mentioned that he was hit in the face on December 3.  Each Defendant also testified and again denied Marbury's claims.  A jury verdict and judgment were subsequently entered in favor of Streeter.

This appeal followed.

## II.

We review for abuse of discretion a district court's decisions as to court-appointed counsel in a civil case, *see Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992), and a district court's discovery decisions, *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999).  When a party challenges a jury's verdict, we will not disturb it unless "there is no material conflict in the evidence, such that no reasonable person could agree to the verdict reached."  *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285 (11th Cir. 2014) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1275 (11th Cir. 2008)).

## III.

On appeal, Marbury argues that the district court abused its discretion in denying him the opportunity to dismiss counsel for

failing to seek a continuance on the last day of trial until certain evidence, such as surveillance footage, could be obtained, and so Marbury could have another inmate come to testify. Marbury also argues that ADOC and the Defendants improperly denied him discovery of relevant material and that the magistrate judge should have granted his motions for a subpoena. He asserts that this resulted in a denial of due process and argues that he was denied the right to present material evidence at trial, which he claims would have changed the outcome of the case. Marbury asks us to "consider the motion for discovery and motion to subpoena in the manner the law demands" and seeks reversal of the jury verdict and a remand for further proceedings.[7]

We turn first to Marbury's arguments with respect to appointed counsel. Like any civil litigant, a prisoner pursuing a § 1983 action "has no absolute constitutional right to the appointment of counsel." *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). Instead, appointment of counsel is a privilege that is "justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Id.* Below, the magistrate judge determined that such circumstances existed in this case and appointed counsel to

---

[7] While the exact contours of most of Marbury's arguments are unclear, "we read briefs filed by *pro se* litigants liberally." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

represent Marbury.  Now, Marbury alleges that the district court erred by failing to allow him to remove appointed counsel.

This argument immediately runs into obstacles, both factual and legal.  As for the facts, our review of the record reveals no indication that Marbury asked the district court to allow him to dismiss counsel.  And Marbury does not point us to evidence that he ever made this request.  Therefore, Marbury is asking us to reverse and remand on a basis that he never presented below.  But "[a]rguments raised for the first time on appeal are not properly before this Court."  *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000).  "If we were to regularly address questions—particularly fact-bound issues—that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court."  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

Marbury's claim also fails on the law.  First, he fails to identify any legal basis for the argument that a district court must *sua sponte* provide a civil litigant with the opportunity to dismiss appointed counsel.  And second, because a civil litigant has no constitutional right to counsel, it follows that there is no right to effective assistance of counsel in a civil case.  *See Mekdeci ex rel. Mekdeci v. Merrell Nat'l Lab'ys*, 711 F.2d 1510, 1522 (11th Cir. 1983).  Therefore, even if Marbury is right that appointed counsel erred by failing to seek a continuance, he does not have a right to a new trial on this basis.  *See id.*  In all, Marbury fails to explain how the district court abused its discretion with respect to appointed counsel and fails to

provide any legal basis for this claim. Thus, he is not entitled to reversal on this issue.

As for the discovery issues, Marbury has not demonstrated that the district court's decisions resulted in "substantial harm to [his] case," *see Carmical v. Bell Helicopter Textron, Inc.*, 117 F.3d 490, 493 (11th Cir. 1997), especially in light of the repeated contentions of the Defendants and ADOC that they turned over the requested material in their possession and that no video evidence existed. Moreover, while Marbury is correct that the district court denied his motions for a subpoena on the basis that his counsel should file them, his counsel later sought similar material, and thus there is no cause for reversal on this basis either.

Marbury's due process argument is similarly flawed. He cites *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir. 1985), and *Harris v. MacDonald*, 555 F. Supp. 137 (N.D. Ill. 1982), in support of his argument. Other than the fact that these cases are not precedent to which we are bound, they are also irrelevant here. Marbury cites to portions of those opinions that concern the due process requirements in prison discipline hearings. In *Mendoza*, the Seventh Circuit applied one of its previous decisions, where the court held "that the Due Process Clause required disclosure of exculpatory evidence or its substance to the defendant in prison disciplinary hearings." 779 F.2d at 1296 (citing *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir. 1981)). And *Harris* concerned, among other things, a § 1983 action raising due process arguments based on the failure to turn over favorable evidence to a prisoner during a disciplinary

proceeding.  555 F. Supp. 3d at 140.  Here, however, Marbury's claims do not arise from a prison disciplinary proceeding.  Moreover, as noted with respect to the previous issue, while Marbury argues that the Defendants and ADOC failed to turn over material evidence, he fails to rebut their response, i.e., that they turned over what they possessed and that there was no video recording of the alleged incident.  Therefore, Marbury's due process argument fails.

Finally, while Marbury points to the evidence he presented below and asks us to reverse "the trial jury verdict," he did not seek this relief below by filing a post-verdict motion under either Rule 50(b) or Rule 59 of the Federal Rules of Civil Procedure.[8]  The Supreme Court has made clear that "a party is not entitled to pursue a new trial on appeal unless that party makes an appropriate post-verdict motion in the district court."  *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006).  Therefore, Marbury has "forfeited [his] right to [seek a new trial] on appeal," and we are "powerless" to grant his requested relief.  *Id.* at 404–05.

For these reasons, we affirm the district court's judgments.

**AFFIRMED.**

---

[8] Rule 50(b) "sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict and entry of judgment." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400 (2006).  Rule 59 allows a district court, on motion, to grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed R. Civ. P. 59(a)(1)(A).